**VIDEO SOFTWARE DEALERS ASSOCIATION, et al.,**
Plaintiffs,

v.

**William L. WEBSTER,**
et al., Defendants.

No. 89–4353–CV–C–9.

United States District Court,
W.D. Missouri, C.D.

July 2, 1991.

William T. Smith, III, Brian D. Williams, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for plaintiffs.

Michael L. Boicourt, Missouri Atty. Gen's. Office, Richard G. Callahan, Jefferson City, Mo., for defendants.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PERMANENTLY ENJOINING ENFORCEMENT OF CERTAIN PROVISIONS OF HOUSE BILL 225

BARTLETT, District Judge.

*Introduction*

Plaintiffs challenge the constitutionality of certain provisions of Conference Committee Substitute for House Committee Substitute for House Bill No. 225, 85th General Assembly, entitled "An Act to repeal section 573.010, RSMo Supp.1988, relating to offenses relating to pornography, and to enact in lieu thereof three new sec-

tions relating to the same subject, with penalty provisions" (the Act).

The challenged provisions are:

Section 1.1. Video cassettes or other video reproduction devices, or the jackets, cases or coverings of such video reproduction devices shall be displayed or maintained in a separate area ... if:

    (1) Taken as a whole and applying contemporary community standards, the average person would find that it has a tendency to cater or appeal to morbid interest in violence for persons under the age of seventeen; and

    (2) It depicts violence in a way which is patently offensive to the average person applying contemporary adult community standards with respect to what is suitable for persons under the age of seventeen; and

    (3) Taken as a whole, it lacks serious literary, artistic, political, or scientific value for persons under the age of seventeen.

2. Any video cassette or other video reproduction devices meeting the description in subsection 1 of this section shall not be rented or sold to a person under the age of seventeen years.

3. Any violation of the provisions of subsection 1 or 2 of this section shall be punishable as an infraction....

Plaintiffs have moved for summary judgment arguing that the challenged provisions of the Act are unconstitutional on their face because: 1) the provisions impermissibly regulate expression that is protected by the First Amendment, 2) the provisions do not give fair notice of what video cassettes are subject to regulation because the statutory language is vague, and 3) the Act unconstitutionally imposes strict liability because there is no requirement that a defendant knowingly violate the Act.

### Standard for Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly

supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.*, 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson v. Liberty Lobby*, 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 2512.

*The Challenged Provisions Are Unconstitutional On Their Face Because They Are Not Narrowly Tailored to Promote a Compelling State Interest*

■ Plaintiffs argue that the challenged provisions are a form of unconstitutional censorship because restrictions are placed on the dissemination of video cassettes based solely on their content. The kind of expression recorded on a particular video cassette determines whether it must be kept in a "separate area" and whether it can be rented or sold to a person under 17 years of age.

Defendants do not dispute that the Act restricts the dissemination of certain video cassettes based on their content. However, defendants argue that the Act is a legitimate exercise of the State's broad power to protect the welfare of minors. Defendants assert that Missouri constitutionally can adopt more stringent controls on communication to minors than it can on communication to adults. According to defendants, the Act must be upheld because the Missouri General Assembly rationally could have concluded that the regulated materials are harmful to minors and that there is a rational relationship between the regulation provided in the Act and the objective of safeguarding minors.

In *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), Erznoznik challenged the constitutionality of an ordinance prohibiting any person connected with a drive-in theater from exhibiting any image in which "the human male or female bare buttocks, human female bare breasts, or human bare pubic areas are shown" if such image "is visible from any public street or public place." *Id.*, 95 S.Ct. at 2271. Jacksonville argued that it could protect its citizens "against unwilling exposure to materials that may be offensive." *Id.* at 2272.

The United States Supreme Court noted that the ordinance did not seek to protect citizens from all movies that might offend. Rather, it singled out only certain movies.

A State or municipality may protect individual privacy by enacting reasonable time, place, and manner regulations applicable to all speech irrespective of content. But when the government, acting as censor, undertakes selectively to shield the public from some kinds of speech on the ground that they are more offensive than others, the First Amendment strictly limits its power....

The plain, if at times disquieting, truth is that in our pluralistic society, constantly proliferating new and ingenious forms of expression, 'we are inescapably captive audiences for many purposes.' *Rowan v. Post Office Dept., supra*, 397 U.S. [728] at 736, 90 S.Ct. [1484] at 1490. [ (1970) ]. Much that we encounter offends our esthetic, if not our political and moral, sensibilities. Nevertheless, the

Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer. Rather, absent the narrow circumstances described above, the burden normally falls upon the viewer to 'avoid further bombardment of [his] sensibilities simply by averting [his] eyes.'

*Id.* at 2272–73 (other citations omitted).

Jacksonville argued that the ordinance was an exercise of the city's power to protect children. The Supreme Court agreed that the city had the power to protect children.

It is well settled that a State or municipality can adopt more stringent controls on communicative materials available to youths than on those available to adults. *See, e.g., Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). Nevertheless, minors are entitled to a significant measure of First Amendment protection, *see Tinker v. Des Moines School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them.

*Id.* at 2274. After noting that the ordinance forbids films displaying certain images "irrespective of context or pervasiveness," the Supreme Court stated:

Nor can such a broad restriction be justified by any other governmental interest pertaining to minors. Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them. In most circumstances, the values protected by the First Amendment are no less applicable when government seeks to control the flow of information to minors. *See Tinker v. Des Moines School Dist., supra,* Cf. *West Virginia Bd. of*

*Ed. v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). Thus, if Jacksonville's ordinance is intended to regulate expression accessible to minors it is overbroad in its proscription.

*Id.* at 2275.

■ Unlike obscenity, violent expression is protected by the First Amendment. Plaintiffs argue that the Constitution only allows regulation of protected speech aimed at minors that is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). I disagree. *Brandenburg* did not concern the regulation of expression directed toward young people.

■ The State has a compelling interest in protecting the physical and psychological well-being of minors. *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989); *Ginsberg v. State of New York*, 390 U.S. 629, 88 S.Ct. 1274, 1281, 20 L.Ed.2d 195 (1968); *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 443, 88 L.Ed. 645 (1944). "It is well settled that a State or municipality can adopt more stringent controls on communicative materials available to youths than on those available to adults." *Erznoznik*, 95 S.Ct. at 2274. In cases concerning expression directed toward minors, the Supreme Court has upheld content regulation of indecent, as well as obscene, speech. *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) (children can be protected from speech which is indecent but not obscene); *F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978) (because the broadcast media is both pervasive and uniquely accessible to children, the broadcast of indecent speech can be regulated in some situations); *Ginsberg*, 88 S.Ct. 1274 (minors can be shielded from the influence of literature that is not obscene by adult standards).[1]

---

1. In *Prince,* 64 S.Ct. 438, the Supreme Court also held that the State has greater authority to control the free exercise of religion by children than by adults.

In *Ginsberg* at 1281, the Court stated that "[t]o sustain State power to exclude material defined as obscenity ... requires only that we be able to say that it was not irrational for the legislature to find that exposure to material condemned by the statute is harmful to minors." Defendants argue that "[u]nder *Ginsberg*, plaintiffs must demonstrate that there is no rational basis by which the Missouri Legislature could conclude violent video material prohibited by the Violent Video Statute is harmful to minors."

Plaintiffs respond that the "rational basis" test was applied by the Court in *Ginsberg* only because obscenity was involved which fell outside the protection of the First Amendment.

In *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 2022, n. 22, 52 L.Ed.2d 675 (1977), the Supreme Court contrasted the regulation of obscenity in *Ginsberg* with the effort in *Carey* to regulate distribution of contraceptives:

> Appellants argue that the statement in *Ginsberg v. New York* that 'it was not irrational for the legislature to find that exposure to material condemned by the statute is harmful to minors,' is authority that the burden is appellees' to prove that there is no connection between the statute and the asserted state policy. But *Ginsberg* concerned a statute prohibiting dissemination of obscene material that it held was not constitutionally protected. In contrast, § 6811(8) concerns distribution of material access to which is essential to exercise of a fundamental right.

The Court stated that "where a decision as fundamental as that whether to bear or beget a child is involved, regulations imposing a burden on it may be justified only by compelling state interests, and must be narrowly drawn to express only those interests." *Id.*, 97 S.Ct. at 2016 (citation omitted).

The First Amendment protects fundamental rights. In *Sable Communications of California, Inc.*, 109 S.Ct. at 2836, the Supreme Court considered the constitutionality of a statute regulating "sexual expression which is indecent but not obscene," a form of speech protected by the First Amendment.

The government may, however, regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest. We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors.... The government may serve this legitimate interest, but to withstand constitutional scrutiny, 'it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. It is not enough to show that the government's ends are compelling; the means must be carefully tailored to achieve those ends.

(Citations omitted.)

■ The Supreme Court has not held that violent speech is unprotected by the Constitution. Therefore, in order for the Missouri General Assembly constitutionally to regulate violent expression directed toward young people, its legislation must be narrowly drawn to further precisely the State's articulated interest in the welfare of minors without interfering unnecessarily with First Amendment freedoms.

Counsel for Missouri argues that this Act is intended to protect the welfare of minors. However, neither in the Act nor in the legislative history is there any articulation of the precise goal or goals the General Assembly hoped to achieve. All that can be gleaned with any confidence from the Act is that the General Assembly wanted to restrict minors' exposure to some vaguely defined kinds of violent expression.

Missouri is attempting to regulate only certain kinds of speech based on its content. These regulations burden the exercise of a fundamental right. "[T]he First Amendment strictly limits ..." Missouri's power to do so. *Erznoznik*, 95 S.Ct. at 2272.

The General Assembly's failure to articulate precisely the type of violence it concluded to be detrimental to minors makes it

virtually impossible to determine if the statute is narrowly drawn to regulate only that expression. Use of words like "morbid interest in violence" and "contemporary adult standards with respect to what is suitable for persons under the age of seventeen" do not express with clarity what the General Assembly was attempting to regulate.

Counsel for Missouri argues that the purpose of the Act is to regulate so-called "slasher" movies. This purpose is not readily discernible from the wording of the Act. If the General Assembly was attempting to regulate the distribution of "slasher" movies to minors, it should have said so and then defined precisely what it concluded "slasher" movies to be.

Counsel for Missouri argues that the Act is constitutional because the General Assembly attempted to use language that has been approved by the Supreme Court for regulating the dissemination of obscenity. However, unlike obscenity, violent speech or speech about violence has not been determined to be outside the protection of the First Amendment. Far greater precision must be used in articulating the purpose of an act regulating protected speech than unprotected speech.

Because the purpose of the Act is not articulated with clarity, it is impossible to determine if the burden placed on free expression is "carefully tailored" to achieve the General Assembly's purpose. Accordingly, the Act is overbroad in its proscription.

The Act's imprecise language also causes it to be unconstitutionally vague.

*The Act is Unconstitutionally Vague*

Plaintiffs argue that the challenged provisions are unconstitutional on their face because they contain vague standards for identifying precisely what expression is subject to governmental restriction. Defendants argue that Missouri's statute provides clear guidance to persons of common intelligence. According to defendants, the term "violence" is commonly understood. The kinds of violence prohibited by the statute are made clear by the limitations

that regulated violence must be "patently offensive" and must lack "serious literary, artistic, political or scientific value for persons under the age of seventeen."

A strict standard applies to statutes that have a potential inhibiting effect on freedom of speech.

[First Amendment] freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.

*N.A.A.C.P. v. Button*, 371 U.S. 415, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) (citations omitted).

If a statute is to avoid unconstitutional vagueness, it must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). The requirement that a Legislature establish minimal guidelines to govern law enforcement is the more important aspect of the vagueness standard. *Id.* (citations omitted). A vague law is a convenient tool for discriminatory law enforcement and for arbitrary suppression of First Amendment liberties. *Id.*, 103 S.Ct. at 1858–60.

According to defendants' counsel, the Missouri General Assembly attempted to paraphrase the three-part test for defining obscenity adopted by the Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The General Assembly failed to heed the warning in *Miller* that because of "the inherent dangers of undertaking to regulate any form of expression ... [s]tate statutes designed to regulate obscene materials must be carefully limited." *Id.*, 93 S.Ct. at 2614. The Supreme Court gives examples of the degree of specificity required, *e.g.*, "patently offensive representations or descriptions of

ultimate sexual acts, normal or perverted, actual or simulated." *Id.* at 2615.

[N]o one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct *specifically defined by the regulating state law, as written or construed.* We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution. (Emphasis added.)

*Id.* at 2616. *See* the statute upheld in *Ginsberg*, 88 S.Ct. at 1283–84, which specifically defined materials that were deemed obscene for minors.

Here, the Act contains none of the specificity that was required by *Miller* in order to regulate expression constitutionally. For instance, crucial words in the regulation, *e.g.,* "violence" and "morbid" are not defined. Without specific definitions of prohibited conduct, people of common intelligence, whether prosecutors or video dealers, must guess at the meaning of the statute.

The Act is unconstitutionally vague.

### The Act Unconstitutionally Imposes Strict Liability

■ Even where the speech being regulated is unprotected by the First Amendment, *e.g.,* obscenity and child pornography, the State must establish that the defendant knowingly violated the law. *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 3358–59, 73 L.Ed.2d 1113 (1982) (citations omitted).

In *Smith v. People,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), the Supreme Court held that an ordinance imposing strict criminal liability on a bookseller who possessed obscene material in his shop was unconstitutional because of its tendency to inhibit protected expression.

The ordinance here in question, to be sure, only imposes criminal sanctions on a bookseller if in fact there is to be found in his shop an obscene book. But our holding in *Roth* does not recognize any state power to restrict the dissemination of books which are not obscene; and we think this ordinance's strict liability feature would tend seriously to have that effect, by penalizing booksellers, even though they had not the slightest notice of the character of the books they sold.

*Id.,* 80 S.Ct. at 218.

The Supreme Court described the dangers of attempting to regulate expression without a requirement that the bookseller have knowledge of the contents of the subject book.

By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature. It has been well observed of a statute construed as dispensing with any requirement of scienter that: 'Every bookseller would be placed under an obligation to make himself aware of the contents of every book in his shop. It would be altogether unreasonable to demand so near an approach to omniscience.' *The King v. Ewart,* 25 N.Z.L.R. 709, 729 (C.A.). And the bookseller's burden would become the public's burden, for by restricting him the public's access to reading matter would be restricted. If the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed. The bookseller's limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his absolute criminal liability, thus would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly. The bookseller's self-censorship, compelled by the State, would be a censorship affecting the

whole public, hardly less virulent for being privately administered. Through it, the distribution of all books, both obscene and not obscene, would be impeded.

*Id.* at 218–19.

Under the Act, a video store operator would be subject to the same pressures to restrict access to videos that the operator has not viewed.

Defendants argue that knowledge on the part of a defendant is not required because a violation of the challenged provisions of the Act is an infraction punishable only by a civil penalty. Mo.Rev.Stat. § 556.021 provides:

1. An offense defined by this code or by any other statute of this state constitutes an 'infraction' if it is so designated or if no other sentence than a fine, or fine and forfeiture or other civil penalty is authorized upon conviction.

2. An infraction does not constitute a crime and conviction of an infraction shall not give rise to any disability or legal disadvantage based on conviction of a crime.

Although the statute says that an infraction is not a crime, § 556.021 is found in Title 38 of the Revised Missouri Statutes entitled *"Crimes and Punishment; Peace Officers and Public Defenders"* (emphasis added).

Furthermore, even if an infraction may not be a crime, a fine may be imposed by the state for violating the Act. Therefore, conviction of an infraction carries with it the risk of self-censorship discussed in *Smith.*

The State does not present any authority supporting its position that it can regulate the content of expression by means of civil penalties. The First Amendment provides that "Congress shall make *no* law ... abridging the freedom of speech...." (Emphasis added.) It does not provide only that Congress shall make no law with "criminal" sanctions abridging the freedom of speech.

Therefore, without a provision in the Act that the State must show the defendant knowingly violated the law, the hazard of self-censorship described in *Smith* requires that the Act be declared unconstitutional unless an appropriate intent requirement can be inferred.

The Supreme Court has held that "[i]n evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Kolender v. Lawson,* 103 S.Ct. at 1857, *quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 1191, n. 5, 71 L.Ed.2d 362 (1982). A state statute should not be declared unconstitutional on its face "unless it is not readily subject to a narrowing construction by the state courts ... and its deterrent effect on legitimate expression is both real and substantial." *Erznoznik,* 95 S.Ct. at 2276 (citations omitted).

In this case, there is no possibility of a limiting construction. The State does not argue that a *scienter* requirement can be added or inferred. *See Ginsberg,* 88 S.Ct. at 1283. Furthermore, without legislative history revealing precisely what the General Assembly intended to regulate, a state court would have no basis for limiting the unconstitutionally vague provisions of the Act.

### *Plaintiffs Will Be Awarded A Reasonable Attorney's Fee*

Plaintiffs seek a reasonable attorney's fee pursuant to 42 U.S.C. § 1988.

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983. Section 1988 provides in part that "[i]n any action or proceeding to enforce a provision of ... [42 U.S.C. §] 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

In their Response in Opposition, defendants argue only that "plaintiffs' request for a fee award is premature at this juncture."

Because plaintiffs are prevailing parties, they are entitled to the award of a reasonable attorney's fee. Plaintiffs should sub-

mit their claim for attorney's fees within 20 days from the date of this order. Plaintiffs shall provide an affidavit setting forth in detail the work for which compensation is being sought and the basis for the reasonableness of the hourly rates claimed.

If defendants object to the reasonableness of the request, defendants shall file their specific objections within 20 days after receipt of plaintiffs' claims. Within 12 days thereafter, counsel shall discuss defendants' concerns. If an agreement can be reached on the amount of a reasonable fee, a joint statement shall be filed within the 12–day period so stating. If an agreement cannot be reached, counsel shall file a joint statement setting forth the specific factual and legal issues that are unresolved plus the length of time needed for a hearing to present the parties' respective positions on those issues.

### Conclusion

In *Erznoznik,* 95 S.Ct. at 2268, the Court invalidated a city ordinance prohibiting the showing of films containing nudity by a drive-in theater when its screen was visible from a public street or place.

> In concluding that this ordinance is invalid we do not deprecate the legitimate interests asserted by the City of Jacksonville. We hold only that the present ordinance does not satisfy the rigorous constitutional standards that apply when government attempts to regulate expression. Where First Amendment freedoms are at stake, we have repeatedly emphasized that precision of drafting and clarity of purpose are essential. These prerequisites are absent here.

*Id.* at 2277.

In concluding that the challenged provisions of the Act are unconstitutional, I do not minimize Missouri's compelling interest in the welfare of the youth of the State. I only hold that the challenged provisions of the Act do not meet the constitutional standards that apply when a State attempts to regulate expression. Precision of drafting and clarity of purpose are absent in the challenged provisions. Therefore, the challenged provisions of the Act must be declared unconstitutional.

Accordingly, it is hereby ORDERED that:

1) the challenged provisions of the Act are declared unconstitutional;

2) defendants permanently are enjoined from enforcing, or directing the enforcement of, the challenged provisions of the Act;

3) plaintiffs shall maintain the bond previously ordered until the injunction granted in this order becomes final or is dissolved or modified by an appellate court; and

4) the parties shall comply with the deadlines set forth in this opinion for presentation of the parties' positions on plaintiffs' request for the award of a reasonable attorney's fee.