968 F.2d 684
 61 USLW 2043, 20 Media L. Rep. 1384
 VIDEO SOFTWARE DEALERS ASSOCIATION, a Delaware corporation;
Missouri Retailers Association, a Missouri corporation;
Missouri Grocers' Association, a Missouri corporation;
Motion Picture Association of America, Inc., a New York
corporation; Video Express, Inc., doing business as
Applause Video, a Missouri corporation; Bailey's C.C.
Enterprises, Inc., a Missouri corporation, for themselves &
as representatives of a class of retailers & distributors
that sell or rent or maintain video cassettes or other
reproduction devices in the State of Missouri that might be
subject to regulation under a newly-enacted Missouri statute
entitled "CCS HCS HB 225"
[Truly Agreed to & Finally Passed], 1st Reg.Sess.
85th General Assembly, an Act to
Repeal Section 573.010, R.S.Mo.Supp.1988, relating to
pornography, & to enact in lieu thereof three new sections
relating to the same subject, with penalty provisions, & who
object to the suppression of constitutionally protected
expression by that Act, Appellees,
v.
William L. WEBSTER, Attorney General, State of Missouri;
Richard Callahan, Prosecuting Attorney for Cole County in
his official capacity & as a representative of the class of
all persons empowered to enforce the Act referred to above,
Appellants.
 No. 91-2797WM.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 12, 1992.
Decided July 1, 1992.
 
 Robert L. Presson, Asst. Atty. Gen., Jefferson City, Mo., argued (Michael L. Boicourt, appeared on the brief), for appellants.
 James P. Mercurio, Washington, D.C., argued (Charles B. Ruttenberg and David L. Kelleher, Washington, D.C., and William T. Smith, III and Brian D. Williams, Kansas City, Mo., appeared on the brief), for appellees.
 Before FAGG and BOWMAN, Circuit Judges, and WOODS,* District Judge.
 FAGG, Circuit Judge.
 
 
 1
 This case presents a pre-enforcement challenge to the constitutionality of a Missouri statute that restricts the rental or sale of videocassettes or other video reproduction devices (collectively videos) depicting any type of violence in a defined way. The statute prohibits the rental or sale of these videos to minors and requires video dealers to display or maintain the videos in a separate area within their stores. The statute's challengers represent three groups: associations whose members rent or sell videos to the public; the Motion Picture Association of America, Inc. (MPAA), whose members include producers and distributors of films that are eventually released on videos; and owners and operators of two Missouri video retail stores, on behalf of a class of all retailers and distributors of videos in Missouri (collectively appellees). The appellants are the Missouri Attorney General, a county prosecuting attorney, and all others empowered to enforce the statute (collectively Missouri). The district court declared the statute unconstitutional on its face and permanently enjoined the statute's enforcement. Video Software Dealers Ass'n v. Webster, 773 F.Supp. 1275, 1283 (W.D.Mo.1991). Missouri appeals and we affirm.
 
 
 2
 The challenged part of the statute provides:
 
 
 3
 1. Video cassettes or other video reproduction devices, or the jackets, cases or coverings of such video reproduction devices shall be displayed or maintained in a separate area ... if:
 
 
 4
 (1) Taken as a whole and applying contemporary community standards, the average person would find that it has a tendency to cater or appeal to morbid interests in violence for persons under the age of seventeen; and
 
 
 5
 (2) It depicts violence in a way which is patently offensive to the average person applying contemporary adult community standards with respect to what is suitable for persons under the age of seventeen; and
 
 
 6
 (3) Taken as a whole, it lacks serious literary, artistic, political, or scientific value for persons under the age of seventeen.
 
 
 7
 2. Any video cassettes or other video reproduction devices meeting the description in subsection 1 of this section shall not be rented or sold to a person under the age of seventeen years.
 
 
 8
 3. Any violation of the provisions of subsection 1 or 2 of this section shall be punishable as an infraction....
 
 
 9
 Mo.Rev.Stat. § 573.090 (Supp.1991) (emphasis added). Under Missouri law, an infraction is not a crime, Mo.Rev.Stat. § 556.021.2 (1986), but a person convicted of an infraction may be fined $200, id. § 560.016.1(4).
 
 
 10
 At the outset, we observe it is unclear what type of videos the statute targets. The statute contains no definition of "violence" specifying the violent acts to which the statute's three-part test applies. No explanation of purpose accompanies the statute. There is no legislative history. In an article written after the violent video bill's passage, the sponsoring state representative wrote that the bill was designed to cover movies containing " 'graphic sexual torture, bondage, rape, cannibalism, human brutality and mutilation.' " Kenneth D. Rozell, Missouri Statute Attacks "Violent" Videos: Are First Amendment Rights in Danger?, 10 Loy.Ent.L.J. 655, 666 (1990) (quoting Slasher Video Law Draws Contrasting Reviews, The Statesman, July 1989, at 6).
 
 
 11
 In its brief, Missouri inconsistently identifies the targeted videos. In sharp contrast to the statute's nonspecific language, Missouri first asserts the statute targets "slasher" videos, which Missouri describes as "blood and gore movies" displaying "the most bestial and graphic acts of violence imaginable" such as "excessive scenes of murder, rape, sadomasochistic sex, autopsies, mutilations, satanism, and assorted perversions." Missouri then more broadly asserts the statute is aimed at "graphically violent videos." Missouri later asserts the statute targets "all kinds of violence that exhibit [the statutory] characteristics."
 
 
 12
 The district court concluded the challenged part of the violent video statute is unconstitutional for three alternative reasons: it is not narrowly tailored to promote a compelling state interest, 773 F.Supp. at 1277-80, it is vague, id. at 1280-81, and it imposes strict liability, id. at 1281-82.
 
 
 13
 First, we agree with the district court that the statute is not narrowly tailored to promote a compelling state interest. At oral argument, Missouri conceded the First Amendment "generally" protects videos depicting violent conduct. See Winters v. New York, 333 U.S. 507, 508, 510, 68 S.Ct. 665, 666, 667, 92 L.Ed. 840 (1948) (First Amendment protects pictures and stories of "deeds of bloodshed, lust or crime"); see also Sovereign News Co. v. Falke, 448 F.Supp. 306, 394 (N.D.Ohio 1977) ("[m]aterial limited to forms of violence is ... given the highest degree of [First Amendment] protection") (later history omitted); American Booksellers Ass'n v. Hudnut, 771 F.2d 323, 330 (7th Cir.1985) (violence on television is protected speech). In its brief, however, Missouri contends the videos are "obscene" for children and, thus, the statute need only be rationally related to the objective of safeguarding minors from harm. See Ginsberg v. New York, 390 U.S. 629, 637, 643, 88 S.Ct. 1274, 1279, 1282, 20 L.Ed.2d 195 (1968) (applying rational relation test to statute prohibiting sale to minors of "sex material" deemed obscene for minors).
 
 
 14
 We agree with Missouri that the First Amendment does not protect obscenity. Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957); Miller v. California, 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973) (providing current definition of obscenity). We also agree with Missouri that expression which is not obscene for adults may be obscene for children if the expression bears certain indicia of obscenity when examined from a minor's point of view. Ginsberg, 390 U.S. at 636-37, 88 S.Ct. at 1278-79. Obscenity, however, encompasses only expression that "depict[s] or describe[s] sexual conduct." Miller, 413 U.S. at 24, 93 S.Ct. at 2614-15; see Roth, 354 U.S. at 487, 77 S.Ct. at 1310; Erznoznik v. City of Jacksonville, 422 U.S. 205, 213 n. 10, 95 S.Ct. 2268, 2275 n. 10, 45 L.Ed.2d 125 (1975) (expression must be erotic to be obscene). Material that contains violence but not depictions or descriptions of sexual conduct cannot be obscene. Falke, 448 F.Supp. at 394. Thus, videos depicting only violence do not fall within the legal definition of obscenity for either minors or adults.
 
 
 15
 Missouri, however, asserts the statute is a constitutional exercise of its power to protect children. We disagree. Because states have an interest in the well-being of their youth, the states' power to regulate communicative materials available to children is somewhat broader than their power to regulate materials available to adults. Erznoznik, 422 U.S. at 212, 214 n. 11, 95 S.Ct. at 2274, 2275 n. 11. "Nevertheless, minors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them." Id. at 212-13, 95 S.Ct. at 2274 (citation omitted); see id. at 214 n. 11, 95 S.Ct. at 2275 n. 11.Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them. In most circumstances, the values protected by the First Amendment are no less applicable when government seeks to control the flow of information to minors.
 
 
 16
 Id. at 213-14, 95 S.Ct. at 2275 (emphasis added) (footnote omitted). In this case, we need not decide whether states can legitimately proscribe dissemination of material depicting violence to minors because Missouri's statute cannot survive strict scrutiny. See Thomas G. Krattenmaker & L.A. Powe, Jr., Televised Violence: First Amendment Principles and Social Science Theory, 64 Va.L.Rev. 1123, 1255-57 (1978); Cinecom Theaters Midwest States, Inc. v. City of Fort Wayne, 473 F.2d 1297, 1302 (7th Cir.1973).
 
 
 17
 Missouri concedes the statute regulates the dissemination of speech based on its content. Thus, Missouri must justify its content-based restriction on protected speech by showing the statute is narrowly drawn to advance an articulated, compelling governmental interest. See Sable Communications of Cal., Inc. v. FCC, 492 U.S. 115, 126, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989) (reviewing "dial-a-porn" statute). When serving its "compelling interest in protecting the physical and psychological well-being of minors," a state must use " 'narrowly drawn regulations designed to serve [that] interest[ ] without unnecessarily interfering with First Amendment freedoms.' " Id. (quoting Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980)). The state must show both that its purpose is compelling and that its means are carefully tailored to achieve the purpose. Id.
 
 
 18
 Because the Missouri legislature failed to articulate the type of violence it deems harmful to minors, the district court found it "virtually impossible to determine if the statute is narrowly drawn to regulate only that expression." 773 F.Supp. at 1279-80. The district court also found the statute's references to "morbid interest in violence" and "suitable for persons under the age of seventeen" do not clearly identify the targeted material. Id. at 1280. We agree with this analysis.
 
 
 19
 Even assuming the statute aims to protect minors from the harmful effects of viewing slasher videos as Missouri contends, we conclude the statute is not narrowly drawn to achieve its end without unnecessarily infringing on freedom of expression. The statute does not refer to slasher videos or define the term "slasher." As drawn the statute covers all types of violence. Missouri assures us the statute does not apply to animated violence in many cartoon shows, simulated violence in western and war movies, real violence in the boxing ring, or psychological violence in suspense stories or "thrillers." The statute, however, provides no support for Missouri's assurance. A more precise law limited to slasher films and specifically defining key terms would be less burdensome on protected expression. In our view, " 'every application of the statute create[s] an impermissible risk of suppression of ideas.' " New York State Club Ass'n v. City of New York, 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988) (quoting Members of the City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 798 n. 15, 104 S.Ct. 2118, 2125 n. 15, 80 L.Ed.2d 772 (1984)). Missouri's statute thus violates the First Amendment on its face. Id.
 
 
 20
 Second, we agree with the district court that the statute is unconstitutionally vague. To survive a vagueness challenge, a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and "provide explicit standards for those who apply [the statute]." Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). The degree of constitutional vagueness depends partially on the nature of the enactment. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). A stringent vagueness test applies to a law that interferes with the right of free speech. Id. Missouri's assertion that the statute aims to protect minors does not change the vagueness analysis: " 'It is ... essential that legislation aimed at protecting children from allegedly harmful expression--no less than legislation enacted with respect to adults--be clearly drawn and that the standards adopted be reasonably precise....' " Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 689, 88 S.Ct. 1298, 1306, 20 L.Ed.2d 225 (1968) (quoted case omitted).
 
 
 21
 Missouri asserts the statute is not unconstitutionally vague because the statute adopts Miller's obscenity test. Missouri generally substituted the word "violence" for the term "sexual conduct." Miller, however, requires a specific definition of "sexual conduct" in either the statute or as construed by state courts. Miller, 413 U.S. at 24, 93 S.Ct. at 2615. Here, the statute fails to specifically define "violence." Although Missouri's courts have not had an opportunity to construe the statute, we have no reason to assume they can decisively narrow the statute given the absence of any legislative history or statement of purpose. See Erznoznik, 422 U.S. at 217, 95 S.Ct. at 2276. In addition, "no readily apparent construction suggests itself as a vehicle for rehabilitating the statute[ ] in a single prosecution." Dombrowski v. Pfister, 380 U.S. 479, 491, 85 S.Ct. 1116, 1123, 14 L.Ed.2d 22 (1965). We believe the Missouri courts could only define the prohibited expression on a video-by-video basis. Video dealers "are entitled to be free of the burdens of defending prosecutions, however expeditious, aimed at hammering out the structure of the statute piecemeal." Id. Thus, the district court properly ruled on the statute's constitutionality before state court prosecutions could define the proscribed conduct.
 
 
 22
 Without a definition of "violence," the statute lacks any "narrowly drawn, reasonable and definite standard[ ]" identifying the expression that is subject to the statute's restriction. See Interstate Circuit, 390 U.S. at 690, 88 S.Ct. at 1306. The phrase "tendency to cater or appeal to morbid interests in violence for persons under the age of seventeen" is elusive. Missouri is basically prohibiting the rental or sale of "offensive" videos containing any form of violence. See Mo.Rev.Stat. § 573.090.1(2). Like the district court, we conclude "people of common intelligence, whether prosecutors or video dealers, must guess at the meaning of the statute." 773 F.Supp. at 1281. Because the statute "is impermissibly vague in all of its applications," the statute is facially unconstitutional on due process grounds. Flipside, 455 U.S. at 497, 102 S.Ct. at 1193.
 
 
 23
 Third, we agree with the district court that the statute unconstitutionally imposes strict liability. Statutes that impose criminal responsibility for dissemination of unprotected speech must contain a knowledge requirement. See New York v. Ferber, 458 U.S. 747, 765, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982). Missouri contends the statute's lack of a knowledge requirement is constitutional because violation of the statute is not a crime. See Mo.Rev.Stat. § 556.021.2 (1986). We disagree. In our view, the statute is quasi-criminal in nature. The statute is contained in the "Crimes and Punishment" chapter of the Missouri code, and each violation carries a fine of up to $200. See Mo.Rev.Stat. ch. 573 (1986); id. § 560.016.1(4).
 
 
 24
 In any event, we believe any statute that chills the exercise of First Amendment rights must contain a knowledge element. See Smith v. California, 361 U.S. 147, 151-53, 80 S.Ct. 215, 217-19, 4 L.Ed.2d 205 (1959) (holding statute imposing strict liability for possession of obscene book in bookstore is unconstitutional). By penalizing video dealers regardless of their knowledge of a video's contents, the statute presents a hazard of self-censorship. See id. at 152-53, 80 S.Ct. at 218-19. To comply with the statute, all video dealers would have to view the contents of every video in their stores. See id. at 153, 80 S.Ct. at 218. Dealers would limit videos available to the public to videos the dealers have viewed. See id. at 153-54, 80 S.Ct. at 218-19. This would impede rental and sale of all videos, including those that the statute does not purport to regulate and that the First Amendment fully protects. See id. at 154, 80 S.Ct. at 219. Because the statute's strict liability feature would make video dealers more reluctant to exercise their freedom of speech and ultimately restrict the public's access to constitutionally protected videos, the statute violates the First Amendment.
 
 
 25
 Missouri asserts we should cure the statute's constitutional defects by narrowly construing it. See Erznoznik, 422 U.S. at 216, 95 S.Ct. at 2276. Specifically, Missouri offers a limiting construction requiring video dealers to have knowledge of a prohibited video's contents. Here, there is no state court decision narrowing the statute. We thus lack authority to impose a narrowing construction. United Food & Commercial Workers Int'l Union v. IBP, Inc., 857 F.2d 422, 431 (8th Cir.1988). Even if we were to infer a requirement that video dealers know a video's contents, the statute would not be saved. Nothing less than rewriting the statute to include a definition of violence would begin to remedy the statute's vagueness. It is not our function to rewrite the statute to cure all its constitutional infirmities. Virginia v. American Booksellers Ass'n, 484 U.S. 383, 397, 108 S.Ct. 636, 645, 98 L.Ed.2d 782 (1988). In addition to concluding the statute is not readily subject to a narrowing construction, we are convinced that as written, the statute would have a real and substantial deterrent effect on expression. Erznoznik, 422 U.S. at 216, 95 S.Ct. at 2276. Thus, the statute is facially invalid and the district court properly enjoined the statute's enforcement. Dombrowski, 380 U.S. at 491, 85 S.Ct. at 1123.
 
 
 26
 We realize many states are attempting to restrict dissemination of violent videos to children. See Richard P. Salgado, Regulating a Video Revolution, 7 Yale L. & Pol'y Rev. 516, 520-22 (1989). In concluding Missouri's statute is invalid, we do not belittle the State's interest in the well-being of minors. "We hold only that the present [statute] does not satisfy the rigorous constitutional standards that apply when government attempts to regulate expression." Erznoznik, 422 U.S. at 217, 95 S.Ct. at 2277. When First Amendment freedoms are at stake, the Supreme Court has "repeatedly emphasized that precision of drafting and clarity of purpose are essential. These prerequisites are absent here." Id. at 217-18, 95 S.Ct. at 2277.
 
 
 27
 We affirm the district court.
 
 
 
 *
 The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation