# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3010

_____

| | | |
|---|---|---|
| Interactive Digital Software | * | |
| Association; Missouri Retailers | * | |
| Association; Video Software Dealers | * | |
| Association; American Amusement | * | |
| Machine Association; Amusement & | * | |
| Music Operators Association; | * | |
| Interactive Entertainment Merchants | * | |
| Association; BFC Enterprises, Inc.; | * | |
| J.S. Morris and Sons Novelty | * | |
| Company; Vending Enterprises, | * | |
| doing business as Midwest | * | |
| Enterprises, Inc.; Wonder Novelty Co., | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| St. Louis County, Missouri; George R. | * | |
| Westfall, in his official capacity as | * | |
| County Executive of St. Louis County, | * | |
| Missouri; Ronald A. Battelle, in his | * | |
| official capacity as Chief of Police of | * | |
| St. Louis County, Missouri, | * | |
| | * | |
| Appellees. | * | |
| _____ | * | |
| | * | |
| Thirty-Three Media Scholars; | * | |
| International Game Developers | * | |
| Association; ID Software, Incorporated; | * | |
| American Booksellers Foundation for | * | |

Free Expression; Association of      *
American Publishers, Incorporation;    *
Freedom to Read Foundation;       *
International Periodical Distributors   *
Association; Motion Picture        *
Association of America, Incorporated;   *
Publishers Marketing; Recording     *
Industry Association of America; The   *
Thomas Jefferson Center for the     *
Protection of Free Expression;      *
American Civil Liberties Union,      *
                                       *

      Amici on Behalf of Appellant.    *
                                       *

The Lion & Lamb Project; City of     *
Indianapolis,                      *
                                       *

      Amici on Behalf of Appellee.    *
                                       *

_____

Submitted: March 12, 2003

Filed: June 3, 2003
_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This is a suit to enjoin the enforcement of St. Louis County Ordinance No. 20,193 (Oct. 26, 2000), which amends Chapter 602 of the St. Louis County Revised Ordinances by adding new sections 602.425 through 602.460. The ordinance, in relevant part, makes it unlawful for any person knowingly to sell, rent, or make available graphically violent video games to minors, or to "permit the free play of"

graphically violent video games by minors, without a parent or guardian's consent.[1] The plaintiffs (companies or associations of companies that create, publish, distribute, sell, rent, and make available to the public video games and related software) assert that the ordinance violates the right of free speech guaranteed by the first amendment.

The plaintiffs moved for summary judgment, seeking to have the ordinance declared unconstitutional; the district court denied that motion. *Interactive Digital Software Ass'n v. St. Louis County*, 200 F. Supp. 2d 1126 (E.D. Mo. 2002). Because the district court had considered and upheld the constitutionality of the ordinance in the course of ruling on the plaintiffs' motion for summary judgment, the district court *sua sponte* dismissed the case. This appeal ensued. We reverse and remand with directions to the district court to enter an injunction that is not inconsistent with this opinion.

## I.

In rejecting the plaintiffs' constitutional challenge to the ordinance, the district court first concluded that video games were not a protected form of speech under the first amendment. *Id.* at 1135. The district court believed that, because video games are a new medium, they must "be designed to express or inform, and there has to be a likelihood that others will understand that there has been some type of expression" before they are entitled to constitutional protection. *Id.* at 1132-33, 1134. But the Supreme Court has long emphasized that the first amendment protects "[e]ntertainment, as well as political and ideological speech," *see Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981), and that a "particularized message" is not required for speech to be constitutionally protected, *Hurley v. Irish-American Gay, Lesbian & Bisexual Group*, 515 U.S. 557, 569 (1995) (internal quotation omitted). *See also Winters v. New York*, 333 U.S. 507, 510 (1948).

---

[1]The ordinance also restricts minors' access to video games with strong sexual content, but plaintiffs do not challenge those provisions of the ordinance.

The record in this case includes scripts and story boards showing the storyline, character development, and dialogue of representative video games, as well as excerpts from four video games submitted by the County. If the first amendment is versatile enough to "shield [the] painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll," *Hurley*, 515 U.S. at 569, we see no reason why the pictures, graphic design, concept art, sounds, music, stories, and narrative present in video games are not entitled to a similar protection. The mere fact that they appear in a novel medium is of no legal consequence. Our review of the record convinces us that these "violent" video games contain stories, imagery, "age-old themes of literature," and messages, "even an 'ideology,' just as books and movies do." *See American Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572, 577-78 (7th Cir. 2001), *cert. denied*, 534 U.S. 994 (2001). Indeed, we find it telling that the County seeks to restrict access to these video games precisely because their content purportedly affects the thought or behavior of those who play them. *See* Preamble to St. Louis County Ordinance No. 20,193 (Oct. 26, 2000).

We recognize that while children have in the past experienced age-old elemental violent themes by reading a fairy tale or an epic poem, or attending a Saturday matinee, the interactive play of a video game might present different difficulties. *See American Amusement*, 244 F.3d at 577-78. The County suggests in fact that with video games, the story lines are incidental and players may skip the expressive parts of the game and proceed straight to the player-controlled action. But the same could be said of action-packed movies like "The Matrix" or "Charlie's Angels"; any viewer with a videocassette or DVD player could simply skip to and isolate the action sequences. The fact that modern technology has increased viewer control does not render movies unprotected by the first amendment, and equivalent player control likewise should not automatically disqualify modern video games that are "analytically indistinguishable from ... protected media such as motion pictures." *See Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 181 (D. Conn. 2002).

We note, moreover, that there is no justification for disqualifying video games as speech simply because they are constructed to be interactive; indeed, literature is most successful when it "draws the reader into the story, makes him identify with the characters, invites him to judge them and quarrel with them, to experience their joys and sufferings as the reader's own," *American Amusement*, 244 F.3d at 577. In fact, some books, such as the pre-teen oriented "Choose Your Own Nightmare" series (in which the reader makes choices that determine the plot of the story, and which lead the reader to one of several endings, by following the instructions at the bottom of the page) can be every bit as interactive as video games.

Whether we believe the advent of violent video games adds anything of value to society is irrelevant; guided by the first amendment, we are obliged to recognize that "they are as much entitled to the protection of free speech as the best of literature." *See Winters*, 333 U.S. at 510. We must therefore determine whether the County has advanced a constitutional justification for the ordinance's restrictions on speech.

## II.

Because the ordinance regulates video games based on their content (the ordinance applies only to "graphically violent" video games), we review it according to a strict scrutiny standard. *See United States v. Dinwiddie*, 76 F.3d 913, 921 (8th Cir. 1996), *cert. denied*, 519 U.S. 1043 (1996); *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 689 (8th Cir. 1992). We reject the County's suggestion that we should find that the "graphically violent" video games in this case are obscene as to minors and therefore entitled to less protection. It is true that obscenity is one of the few categories of speech historically unprotected by the first amendment. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942); *R.A.V. v. St. Paul*, 505 U.S. 377, 382-83 (1992). But we have previously observed that "[m]aterial that contains violence but not depictions or descriptions of sexual conduct cannot be

obscene." *Video Software*, 968 F.2d at 688. Simply put, depictions of violence cannot fall within the legal definition of obscenity for either minors or adults. *See id.*

A content-based restriction on speech is presumptively invalid, and the County therefore bears the burden of demonstrating that the ordinance is necessary to serve a compelling state interest and that it is narrowly tailored to achieve that end. *See R.A.V.*, 505 U.S. at 382, 395. The County first suggests that the ordinance forwards the compelling state interest of protecting the "psychological well-being of minors" by reducing the harm suffered by children who play violent video games. *See Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). We do not question that the County's interest in safeguarding the psychological well-being of minors is compelling in the abstract. *See id.*; *see also New York v. Ferber*, 458 U.S. 747, 756-57 (1982); *Video Software*, 968 F.2d at 689. Yet when the government defends restrictions on speech "it must do more than simply posit the existence of the disease sought to be cured." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (plurality opinion) (internal citation and quotation omitted). We believe that the County "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Id.*

The County's conclusion that there is a strong likelihood that minors who play violent video games will suffer a deleterious effect on their psychological health is simply unsupported in the record. It is true that a psychologist appearing on behalf of the County stated that a recent study that he conducted indicates that playing violent video games "does in fact lead to aggressive behavior in the immediate situation ... that more aggressive thoughts are reported and there is frequently more aggressive behavior." But this vague generality falls far short of a showing that video games are psychologically deleterious. The County's remaining evidence included the conclusory comments of county council members; a small number of ambiguous, inconclusive, or irrelevant (conducted on adults, not minors) studies; and the

testimony of a high school principal who admittedly had no information regarding any link between violent video games and psychological harm.

Before the County may constitutionally restrict the speech at issue here, the County must come forward with empirical support for its belief that "violent" video games cause psychological harm to minors. In this case, as we have already explained, the County has failed to present the "substantial supporting evidence" of harm that is required before an ordinance that threatens protected speech can be upheld. *See Eclipse Enters. v. Gulotta*, 134 F.3d 63, 67 (2d Cir. 1997); *see Turner*, 512 U.S. at 666; *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 822 (2000). We note, moreover, contrary to the district court's suggestion, that the County may not simply surmise that it is serving a compelling state interest because "[s]ociety in general believes that continued exposure to violence can be harmful to children," *Interactive Digital*, 200 F. Supp.2d at 1137. *See American Amusement*, 244 F.3d at 578. Where first amendment rights are at stake, "the Government must present more than anecdote and supposition." *Playboy Entm't*, 529 U.S. at 822.

The County next asserts that it has a compelling interest in "assisting parents to be the guardians of their children's well-being." Indeed, the ordinance states that "parents and guardians should have the power to control the types of games their children play and to control their exposure to violent and sexual materials." Preamble to St. Louis County Ordinance No. 20,193. While it is beyond doubt that "parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society," *Ginsberg v. New York*, 390 U.S. 629, 639 (1968), the question here is whether the County constitutionally may limit first amendment rights as a means of aiding parental authority. We hold that, under the circumstances presented in this case, it cannot.

We believe that *Ginsberg*, the primary case cited by the County in support of its position, is inapposite because it invokes the much less exacting "rational basis"

standard of review. *See Ginsberg*, 390 U.S. at 639, 641. In *Ginsberg*, the Supreme Court recognized that the government could legitimately regulate sexually explicit material that is obscene as to minors but not obscene as to adults. *See Ginsberg*, 390 U.S. at 636-640. But *Ginsberg* did not involve protected speech (like the speech at issue in this case), and thus the Supreme Court merely needed to determine whether "it was *rational* for the legislature to find that the minors' exposure to [sex] material might be harmful. ... *The legislature could properly conclude* that parents and others, teachers for example, who have this primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility." *Id.* at 639 (emphasis added). Nowhere in *Ginsberg* (or any other case that we can find, for that matter) does the Supreme Court suggest that the government's role in helping parents to be the guardians of their children's well-being is an unbridled license to governments to regulate what minors read and view.

We do not mean to denigrate the government's role in supporting parents, or the right of parents to control their children's exposure to graphically violent materials. We merely hold that the government cannot silence protected speech by wrapping itself in the cloak of parental authority. To that end, we are guided by the Supreme Court's recognition that "[s]peech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them. In most circumstances, the values protected by the First Amendment are no less applicable when the government seeks to control the flow of information to minors." *Erznoznik v. Jacksonville*, 422 U.S. 205, 213-14 (1975). To accept the County's broadly-drawn interest as a compelling one would be to invite legislatures to undermine the first amendment rights of minors willy-nilly under the guise of promoting parental authority.

### III.

Because we have already determined that the ordinance cannot survive strict constitutional scrutiny, we do not reach the issue of whether the ordinance is unconstitutionally vague. We also need not consider whether the district court erred in dismissing the case *sua sponte*.

We therefore reverse the judgment of the district court and remand the case for entry of an injunction that is not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.