Edgar K. **HELTERBRAND** and Mary Ann Helterbrand, Respondents,

v.

**FIVE STAR MOBILE HOME SALES, INC., Appellant.**

**No. WD 58418.**

Missouri Court of Appeals, Western District.

June 26, 2001.

George W. Lehnen, III, Richmond, for Respondents.

J.D. Gorham, Richmond, for Appellant.

Before ULRICH, P.J., and EDWIN H. SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

Five Star Mobile Home Sales, Inc., appeals from the judgment of the Circuit Court of Ray County, after a trial before the court, awarding the respondents, Edgar K. and Mary Ann Helterbrand, damages on Count I of their five-count petition, in which count they alleged that the appellant had breached an "implied warranty of merchantability" with respect to the sale of a manufactured home. Although not pled in their petition, the respondents presented evidence and argued at trial that the sales contract regarding the home was amended, requiring the appellant, *inter alia*, to serve as the general contractor for the construction of their garage and for excavation and finish grade work at the home site, and that the garage was defective as constructed and that the dirt work was not completed as agreed.

The appellant raises two points on appeal. In Point I, it claims that the trial court erred in finding for the respondents and awarding them damages on their claim for breach of an "implied warranty of merchantability" with respect to the construction of their garage and the failure to complete the related excavation and finish grade work at the home site because the court's judgment misapplied the law and was not supported by the record. In Point II, it claims that the trial court erred in awarding the respondents damages "under theories of appellant's breach of implied warranty of merchantability or of breach of contract" because such an award was not supported by substantial evidence of the proper measure of damages for such causes of action or misapplied the law to the facts. We affirm in part, and reverse and remand in part.

## Facts

In early September of 1996, the respondents decided to move from Indiana to Kansas City, Missouri, where respondent, Edgar Helterbrand, would be working. Before actually moving, they visited the Kansas City area to determine where they wanted to live. During their visit, they contacted a realtor, having decided they wanted to find some property outside of Kansas City on which to place a manufactured home. To this end, they searched the telephone directory to find a manufactured home dealer in the area, finally deciding upon the appellant.

On September 28, 1996, they entered into a contract for the purchase of a manufactured home from the appellant. The contract was a standard form contract, which specified that it was to be a new 1997 home, 28 feet wide and 56 feet long, with three bedrooms. The purchase price agreed upon was $66,448.15. Included in the price was a stove, refrigerator, and dishwasher. The appellant agreed to deliver the home, set it up on a basement foundation, and hook up the water and sewer lines, "if stubbed within 5 ft of [the] home." The manufacturer of the home was Champion Home Builders Co. (Champion), which was located in Nebraska.

The respondents made a down payment of $6,650 on the home, leaving an unpaid balance of $59,798.15. The contract specified that the $6,650 deposit was "refundable on credit rejection only." Because the respondents were new to town, Rick Spurgeon, a salesman for the appellant, agreed to help procure financing for them to pay the balance of the purchase price. He also agreed to contact contractors for the construction of the garage and the excavating and finish grade work, and told them that, as to the home, it would be a "turn-key" job, meaning that everything would be taken care of so that all the respondents had

to do was "turn the key [to the house] and walk in." Thereafter, the respondents applied for and received a loan commitment from the Cameron Savings and Loan Association. As to the loan agreement, Jeff Paussa, the president of and site manager for the appellant, co-signed as "contractor."

In December of 1996, one month after the respondents were supposed to have moved into their new home, the home arrived, unassembled, at the appellant's dealership in Kansas City. The respondents inspected it and found that it was not as ordered in several respects. Specifically, the walls in several rooms were not drywall, but paneling, and the countertops and kitchen floors were the wrong color. By early March of 1997, the respondents' manufactured home had been delivered to their property, but still remained unassembled. In return for the respondents accepting the home in its nonconforming state, the parties agreed to an "amendment" or addendum to the sales contract, which was dated March 5, 1997. The addendum provided, in pertinent part:

FIVE STAR Mobile Home Sales, Inc.

March 5, 1997

This is an amendment to the purchase agreement dated Sept. 28, 1996 which initiated the order of the Helterbrand's [sic] new home to be built and shipped by Champion Homes.

It is an acknowledgment that their new home model # RU560C, delivered to our dealership Dec. 21, 1996 was somewhat deifferent [sic] than what they ordered.

They have since inspected the home and have agreed to accept it with the cost adjustments reflected in this amendment, and a commitment described below and agreed to by Five Star Mobile Home Sales Inc.

Seller agrees to: ... give buyer a $700.00 allowance to purchase a wallpaper with a textured finish similar to the walls of living area.

Seller has reimbersed [sic] money paid by buyer, directly to sellers [sic] employee to personally perform services not included in the original purchase agreement.

Five Star has also agreed to expedite loan commitment and pay for site costs that exceeded estimates consisting of but not limited to:

Extra rock, gravel and labor to spread this for a driveway, additional excavation and finish grade work, delivery from lot, termite control.

Five Star is fully commited [sic] to seeing to it that the garage is completed no later than March 20, 1997 and sees no apparant [sic] reason that this can't be accomplished.

The addendum further provided that the "Seller agrees to ... give buyers a $250 allowance for phone & TV jacks."

Eventually, the foundation for the home was completed, and the home was installed on the respondents' property. The appellant hired a contractor to build the respondents' garage and found another to do the excavation and finish grade work. On April 11, 1997, the respondents moved into their new home; however, the dirt work remained unfinished. They also found a number of defects in their garage, including holes in the door, a bent door track, and siding which was falling off. Numerous complaints were made to the appellant about the respondents' concerns with the garage and the dirt work. However, their concerns were never satisfied.

On December 29, 1997, the respondents filed a five-count petition for damages in the Circuit Court of Ray County against the appellant and Champion. In Count I,

they alleged that the appellant had "expressly and impliedly warranted to Plaintiffs that the manufactured home … would be of merchantable quality, completely finished, and free from any defects and ready for use," and that the home, as delivered, was "not of merchantable quality, but instead was unfinished, contained a number of defects, and was not ready for use," in breach of the "warranty of merchantability." The respondents did not specifically allege anything with respect to the construction of the garage or the dirt work. In Counts II through V, the respondents alleged, respectively, that the appellant had breached a warranty of fitness for a particular purpose; that Champion had breached a warranty of merchantability; that Champion had breached a warranty of fitness for a particular purpose; and that both parties had made false representations regarding the manufactured home. The respondents prayed for damages of $29,942.77.

On January 28, 1998, the appellant filed its answer, denying liability. The following day, Champion filed its answer. Thereafter, Counts III and IV, the claims against Champion, were voluntarily dismissed with prejudice, by stipulation of the parties. On December 2, 1999, the remaining counts went to a trial before the court. The trial was concluded on the same day, and the case was taken under advisement. On March 30, 2000, the trial court entered its final judgment, wherein it found in favor of the respondents and against the appellant on Count I, awarding the respondents $3,578 in damages. As to Counts II and V, the trial court found in favor of the appellant and against the respondents.[1]

This appeal follows.

## Standard of Review

■ "In reviewing a bench tried case, we are required to sustain the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Medicine Shoppe Int'l, Inc. v. Mehra*, 882 S.W.2d 709, 712 (Mo.App.1994) (*citing Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

## I.

In Point I, the appellant claims that the trial court erred in finding for the respondents and awarding them damages on their claim for breach of an "implied warranty of merchantability" with respect to the construction of their garage and the failure to complete the related excavation and finish grade work at the home site because the court's judgment misapplied the law and was not supported by the record. Specifically, the appellant claims that because the record would only support a finding that, pursuant to the amendment to the parties' contract for the sale of the respondents' manufactured home, it only agreed to act as an "agent" for them concerning the completion of the work in question, and not as a contractor, as a matter of law, an implied warranty of merchantability could not be imposed on the contract. Thus, its claim as to a misapplication of the law is predicated on its claim that the evidence was insufficient to find that it was anything more than an agent for the respondents in the construction of their garage and the excavation and finish grade work at the home site. Given their theory of the case at trial and their evidence, the respondents do not dispute the fact that before they could recover against

---

1. The trial court in its judgment also indicated that it was finding for the appellant on

Counts III and IV, however, these counts were only against Champion.

the appellant, the trial court first had to find that the appellant agreed to serve as the general contractor for the work in question. However, they contend that the record supports such a finding. Hence, the sole issue in this point is whether the evidence was sufficient to support the trial court's finding that the appellant agreed to serve as the general contractor for the construction of the garage and the dirt work in question.

In Count I of their petition, the count on which the trial court expressly found for the respondents, the respondents alleged that the appellant breached either an "express or implied warranty of merchantability" with respect to the manufactured home sold to them by the appellant pursuant to a written sales agreement. Specifically, they alleged:

8. [The appellant] expressly and impliedly warranted to [respondents] that the manufactured home furnished to [them] would be of merchantable quality, completely finished, and free from any defects and ready for use. [The respondents] relied upon the truth of this warranty.

9. The manufactured home furnished to [the respondents] by [the appellant] was not of merchantable quality, but instead was unfinished, contained a number of defects, and was not ready for use, and [the appellant] knew this.

As to the sale of the manufactured home, the parties' agreement provided for the following exclusion of warranties as to the appellant:

**EXCLUSION OF WARRANTIES. I** [the respondents] **UNDERSTAND THAT THE IMPLIED WARRANTIES**

**OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES EXPRESS OR IMPLIED ARE EXCLUDED BY YOU** [the appellant] **FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE GOODS SOLD. I UNDERSTAND THAT YOU MAKE NO WARRANTIES WHATSOEVER REGARDING THE UNIT OR ANY APPLIANCE OR COMPONENT CONTAINED THEREIN, EXCEPT THAT AS MAY BE REQUIRED UNDER APPLICABLE STATE LAW.**

There were no allegations in the respondents' petition as to a breach of an express or implied warranty of merchantability with respect to the construction of the garage or the dirt work allegedly agreed upon. Although not raised in the pleadings, however, there was considerable evidence presented at trial by the respondents as to the construction of the garage being defective and the dirt work not being completed, to which evidence the appellant did not object. Although not pled, by failing to object at trial, the appellant impliedly consented to trying the issue of whether the appellant had contracted to serve as the general contractor for the construction of the garage and the dirt work in the manner required by the contract. Rule 55.33(b);[2] *Heins Implement Co. v. Mo. Highway & Transp. Comm'n,* 859 S.W.2d 681, 685 (Mo. banc 1993). "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b). Thus, the fact that the respondents did not plead a breach of an express or implied warranty

---

**2.** All rule references are to the Missouri Rules of Civil Procedure (2001), unless otherwise indicated.

of merchantability with respect to the construction of their garage and the dirt work in question was not fatal to their claim below.

Pursuant to the sales contract, prior to amendment, the respondents concede that the appellant never made any agreement with respect to the construction of a garage or doing any dirt work at the home site. With respect to any on-site work by the appellant, it only agreed in the original sales contract "TO DELIVER HOME SET UP ON BASEMENT FOUNDATION HOOK UP WATER LINES & SEWER IF STUBBED WITHIN 5 FT OF HOME." However, as the appellant concedes, because there were problems with the home that was delivered by the manufacturer to the appellant for delivery to the respondents, the appellant agreed to an "amendment" or addendum to the sales contract regarding, *inter alia*, the garage and dirt work, the appellant's obligations under which are in dispute.

As to the parties' amendment of the sales contract, the respondents contended at trial that the appellant agreed to serve as the general contractor for the construction of the garage and the "excavation and finish grade work" at the home site; that the garage, as constructed, was defective in several respects; and that the excavation and finish grade work agreed upon was never completed, causing them to be damaged. The trial court expressly found for and entered "judgment in favor of Plaintiffs, Edgar K. Helterbrand and Mary Ann Helterbrand, and against the defendant, Five Star Mobile Home Sales, Inc., in the amount of Three Thousand Five Hundred Seventy-eight Dollars ($3,578.00) on Count I." In computing its award, the court found in its judgment that the respondents were damaged in the following amounts:

| | | |
|---|---|---|
| A. | Wall paper [sic] allowance | $ 700.00 |
| B. | Expense for wiring phone & TV jacks | $ 250.00 |
| C. | Damage to garage door siding and door tracks | $1,128.00 |
| D. | Grading and landscaping | $1,500.00 |
| | | $3,578.00 |

The appellant does not challenge in this point that portion of the court's judgment awarding damages for the wallpaper allowance and the wiring for phone and TV jacks. In challenging the remaining portion of the award as to the construction of the garage and the dirt work, the appellant contends that the record is insufficient to demonstrate that it ever agreed to serve as a general contractor for that work, and as such and as a matter of law, it could not be held responsible for the fact that the construction of the garage was defective or that the dirt work was never completed.

Although the appellant assumes in this point that the trial court's award was based on a finding that the appellant breached an implied warranty of merchantability, that does not appear to be the case in that the record would seem to indicate that the actual theory of recovery on which the court awarded damages may have been for a breach of contract. In this regard, in its judgment, the trial court found that "the Defendant has failed to perform pursuant to the terms of the contract as amended," which sounds more in terms of a simple breach of the express provisions of the contract, rather than a breach of an implied warranty of merchantability. In addition, we would note that the appellant, in Point II refers to the trial court's award "under theories of appellant's breach of implied warranty of merchantability *or of breach of contract.*" (Emphasis added.) Moreover, given the record presented, we fail to see, as a matter of law, how the trial court could have found that there was an implied warranty of merchantability that was breached.

As to an express warranty of merchantability, as noted, *supra,* the sales agreement expressly excludes all warranties of any kind from the appellant as to the sale of the home, and the amendment to the agreement, addressing the construction of the garage and dirt work, makes no mention of any express warranties. As to an implied warranty of merchantability, such a contractual provision will be implied generally in two situations. First, as to personal property, an implied warranty of merchantability is imposed pursuant to § 400.2–314[3] of the UCC on a contract for the sale of "goods," as defined in § 400.2–105(1). "Goods" are defined in that section as:

> all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 400.2–107).

Here, the home, although personal property at the time of manufacture and delivery to the home site owned by the respondents, was converted to real property upon its attachment to the permanent foundation prepared. § 700.111.1(1). Moreover, the work in question, the construction of the garage and the dirt work, did not involve the sale of goods such that, even assuming, *arguendo,* the appellant agreed to act as a general contractor for that

work, as the respondents contend, an implied warranty of merchantability would not be imposed.

■ As to real property, an implied warranty of merchantability will also be imposed under the *Old Warson* doctrine[4] in the case of the sale by a "builder-vendor" of a residence to the first purchaser. *Smith v. Old Warson Dev. Co.,* 479 S.W.2d 795, 796 (Mo. *banc* 1972). The doctrine, however, would not apply in our case, in that, even if it could be assumed that the work in question was an integral part of the residence for purposes of the doctrine, the fact remains that Champion, not the appellant, was the builder of the respondent's residence. *Logan v. Amberson,* 764 S.W.2d 116, 118 (Mo.App.1988) (holding that "[t]he *Old Warson* theory of liability applies only where the builder and vendor are one and the same").

■ Regardless of the fact that it would appear that the respondents' case was not properly pled or decided on a theory of a breach of an implied warranty of merchantability, the fact remains that the appellant did not challenge the sufficiency of the pleadings or judgment on appeal as to the denomination of the respondents' theory of recovery, such that any complaint in that respect is not preserved. *Kabir v. Mo. Dep't of Soc. Servs.,* 845 S.W.2d 102, 102–03 (Mo.App.1993). Rather, it simply attacks the judgment on the basis that it did not agree to serve as a general contractor for the construction of the garage and the dirt work, but only "undertook to facilitate Plaintiffs' accomplishment of these endeavors by introducing contractors

---

**3.** All statutory references are to RSMo 2000, unless otherwise indicated.

**4.** In *Major v. Rozell,* 618 S.W.2d 293, 295 (Mo.App.1981), first noting that in *Old Warson* the supreme court had used the terms "merchantability," "fitness," "habitability," and "quality" interchangeably in referring to

the implied warranty imposed by its holding therein, the appellate court stated that "it is clear that the warranty imposed in *Old Warson* on the builder-vendor was closely analogous to that found in § 400.2–314, which is therein termed 'implied warranty of merchantability.'"

to Plaintiffs and acting as an intermediary and disbursement agent between Plaintiffs and their construction lender by signing as 'contractor' on the loan agreement." This challenge, of course, would be applicable and would work to defeat the respondents' claim, whether it was pled as a breach of an implied warranty of merchantability or as a simple breach of contract for failure to perform under the express provisions of the contract. Thus, regardless of the proper denomination for the theory of recovery, the issue is whether the appellant agreed to serve as the general contractor for the work in question.

▮▮▮ In deciding the issue presented, we necessarily must interpret the sales contract as amended. The "[i]nterpretation of a contract is a question of law, which this [c]ourt reviews de novo." *Goldstein & Price, L.C. v. Tonkin & Mondl, L.C.*, 974 S.W.2d 543, 551 (Mo.App.1998) (*citing Leggett v. Mo. State Life Ins.*, 342 S.W.2d 833, 850 (Mo. *banc* 1960)). " '[T]he cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent.' " *Mo. Consol. Health Care Plan v. BlueCross BlueShield of Mo.*, 985 S.W.2d 903, 909 (Mo.App.1999) (*quoting Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. *banc* 1995)). "In interpreting a contract, we must use the plain, ordinary, and usual meaning of the contract's words and consider the whole document." *Id.* (citations omitted). Where a written contract is unambiguous and complete on its face, parol evidence may not be introduced to vary or contradict the terms of the agreement. *Jake C. Byers, Inc. v. J.B.C. Invs.*, 834 S.W.2d 806, 811 (Mo.App.1992). The trial court cannot consider inadmissible parol evidence in interpreting a contract even if the evidence was admitted without objection. *Poelker v. Jamison*, 4 S.W.3d 611, 613 (Mo.App.1999) (citation

omitted). Extrinsic or parol evidence cannot be used to create an ambiguity. *Harris v. Union Elec. Co.*, 622 S.W.2d 239, 246–47 (Mo.App.1981) (citation omitted). "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms." *Union Ctr. Redev. Corp. v. Leslie*, 733 S.W.2d 6, 9 (Mo.App.1987) (citation omitted); *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. *banc* 1973). A contract is not ambiguous merely because the parties disagree over its meaning. *Hathman*, 491 S.W.2d at 264; *Union Ctr.*, 733 S.W.2d at 9. To determine whether a contract is ambiguous, we consider the whole document and give the words used their natural and ordinary meaning. *Hathman*, 491 S.W.2d at 264.

▮▮▮ According to the respondents, the amendment to the contract contains the provisions pursuant to which the appellant agreed to serve as the general contractor for the work in question. The first provision, addressing the excavation and finish grade work, reads:

> Five Star has also agreed to expedite loan commitment and pay for site costs that exceeded estimates consisting of but not limited to:
>
>> Extra rock, gravel and labor to spread this for a driveway, additional excavation and finish grade work, delivery from lot, termite control.

Pursuant to this provision of the amendment, the respondents contended at trial that the appellant agreed to serve as the general contractor for the excavation and finish grade work at the home site, which provision was breached in that this work was never completed. The trial court agreed and awarded $1,500 in damages for the unfinished work. In contending that the amendment to the sales contract did

not obligate it to serve as the general contractor for the dirt work in question, the appellant argues in its brief that:

> [n]owhere in the record on appeal is there any testimony or document supporting a finding that Five Star expressly and definitely agreed to perform some plan for horseshoe-shaped, triple-terraced landscaping, or that it offered or accepted an offer to build a garage on Plaintiffs' property. No specifics of Five Star's duties to perform these tasks were reasonably ascertainable from the manufactured homes sales contract, the March 7 addendum to it, or any of the parties' discussions....

We would agree. Giving the pertinent language of the amendment its plain and ordinary meaning, we find that the provision is clear and unambiguous on its face and that any fair reading thereof would lead to the conclusion that the appellant was only obligated to expedite the loan commitment and to pay for the site costs enumerated, including the costs for the "additional excavation and finish grade work," and in no way obligated itself to serve as a general contractor for the excavation and finish grade work. Because the amendment, as to the dirt work, was complete and unambiguous on its face, the trial court was not free to consider the parol evidence presented at trial on this issue, whether objected to or not, in determining the intent of the parties with respect to whether the appellant agreed to serve as the contractor for the excavation and finish grade work in question. *Poelker,* 4 S.W.3d at 613 (citation omitted). Hence, the trial court's finding for the respondents on their claim for damages against the appellant for the failure to complete the dirt work allegedly agreed to was in error in that it was not supported by the record, and thus, the court's award thereon of $1,500 for breach of the nonexistent agreement was also in error.

As to the provision of the amendment dealing with the construction of the garage, it reads:

> Five Star is fully commited [*sic* ] to seeing to it that the garage is completed no later than March 20, 1997 and sees no apparant [*sic* ] reason that this can't be accomplished.

The appellant makes the same contention with respect to this provision as it did to the dirt work provision that there was no "testimony or document supporting a finding that [the appellant] expressly and definitely agreed to ... build a garage on Plaintiffs' property." At trial, there was considerable parol evidence introduced by the respondents to establish that the appellant had agreed to serve as the general contractor for construction of the garage. However, pursuant to the parol evidence rule, the trial court could have only considered this evidence, whether objected to or not, if the sales contract as amended was found to be incomplete and ambiguous on its face. *Jake C. Byers, Inc.,* 834 S.W.2d at 811.

Giving the language used in the garage provision of the amendment its plain and ordinary meaning, we find that the provision is ambiguous on its face. From the language, it is readily apparent that the appellant was "committed" or, in other words, agreed "to seeing to it that the garage [was] completed" by the date indicated. However, the language, "seeing to it," is susceptible to more than one meaning in that reasonable persons might fairly and honestly differ as to its interpretation. *Id.* at 816. Some might reasonably interpret this language as simply obligating the appellant to do all within its power to facilitate and cooperate in the construction of the garage to ensure its completion by the specified date; or as the appellant characterizes its agreement in this regard,

it was only agreeing to serve as an agent for the respondents in helping to obtain a contractor for the actual construction. Others, however, might reasonably interpret the provision's language as obligating the appellant to serve as the general contractor for the construction of the garage.

Because the garage provision, as a matter of law, is ambiguous on its face when read in context with the whole sales contract, the trial court was free to consider the parol evidence that was presented at trial to determine the parties' intent as to the appellant's role, if any, in the construction of the garage. In this regard, the respondent, Mary Ann Helterbrand, testified:

Q. Who built the garage?

A. Bob's Decks from Kansas City, I believe.

Q. And who hired Bob's Decks?

A. Mr. Paussa.

Q. And that was another deal that he agreed to act as contractor for?

A. Absolutely; yeah, because we didn't know who to get a hold of.

Q. And you discussed it, and you told him you wanted a garage initially, didn't you?

A. Yes, sir.

Q. And then as time went on you and he agreed on a price for that garage?

A. Yes, sir.

Q. Was the price paid?

A. Yes, sir.

In addition, there was evidence in the record that Jeff Paussa, the appellant's president and site manager, co-signed the respondents' loan agreement as "contractor." In keeping with this evidence, that the parties intended for the appellant to serve as the general contractor for the construction of the garage, is the evidence that Paussa hired, supervised, and paid the contractor who actually constructed the garage. In its entirety, this evidence would be consistent with the appellant's agreeing to serve as the general contractor for the construction of the respondents' garage. *Jeff–Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 14 (Mo.1970). The trial court, as the trier of fact, was free to believe or disbelieve the respondents' evidence in this regard. *Rogers v. Ill. Cent. R.R. Co.*, 833 S.W.2d 426, 429 (Mo.App. 1992). Given the findings of the trial court and its judgment, it is obvious that the court believed the respondents' evidence that the parties intended for the appellant to serve as a general contractor for construction of the garage. Hence, regardless of whether the theory of recovery was breach of an implied warranty of merchantability or simply a breach of contract, the trial court's finding, that the appellant had agreed, pursuant to the amendment to the sales contract, to act as the general contractor for the construction of their garage, was not in error as being unsupported by the evidence, as the appellant contends in this point.

▇▇▇▇ In order to award damages to the respondents with respect to the construction of the garage, the trial court not only had to find that the appellant had agreed to serve as the general contractor for the construction, but that it breached that agreement. In that regard, the respondents alleged in their petition that the garage, as constructed, was defective in several respects. Although, as we discuss, *supra*, an implied warranty of merchantability, as a matter of law, would not be imposed in this situation, Missouri courts recognize that a general contractor does impliedly warrant that the work agreed upon will be done in a workmanlike manner. *Sveum v. J. Mess Plumbing, Inc.*, 965 S.W.2d 924, 926 (Mo.App.1998); *Ribando v. Sullivan*, 588 S.W.2d 120, 123

(Mo.App.1979). Workmanlike in this context is defined as "work which is completed in a skillful manner and is non-defective." *Evans v. Werle,* 31 S.W.3d 489, 491 (Mo.App.2000) (citation omitted). In this regard, we find that the respondents' allegations in their petition, with respect to the breach of the appellant's agreement to serve as the general contractor for construction of the garage, were sufficient to demonstrate a breach of the appellant's obligation to ensure as the general contractor that the garage was constructed in a workmanlike manner. In any event, the appellant does not challenge on appeal the sufficiency of the evidence to support the trial court's finding that the garage was defective as alleged. Thus, we find that the trial court's award of damages with respect to the construction of the garage was not in error as the appellant claims.

## II.

In Point II, the appellant claims that the trial court erred in awarding the respondents damages "under theories of appellant's breach of implied warranty of merchantability or of *breach of contract* because such award was not supported by substantial evidence of the proper measure of damages for such causes of action, or misapplied the law to the facts, in that there was no evidence presented as to the difference in the fair market values of respondents' manufactured home as installed by appellant or caused by lack of repairs and as impliedly warranted by it." (Emphasis added.) We disagree.

As previously discussed, in its judgment, the trial court awarded damages as follows:

| | | |
|---|---|---|
| A. | Wall paper [sic] allowance | $ 700.00 |
| B. | Expense for wiring phone & TV jacks | $ 250.00 |
| C. | Damage to garage door siding and door tracks | $1,128.00 |
| D. | Grading and landscaping | $1,500.00 |
| | | $3,578.00 |

Having already determined in Point I, *supra,* that the trial court erred in awarding damages to the respondents for the appellant's alleged nonperformance under the contract with respect to the "[g]rading and landscaping" work, we obviously will not address the appellant's claim of error in this point with respect to that portion of the award. In addition, as to the remaining damages, given our previous determination that the trial court's award of damages was, in fact, one for breach of contract, based on the implied consent of the parties to try the case on that theory, rather than a breach of an implied warranty of merchantability, our review in this point will be limited to determining whether the trial court erred in awarding damages for breach of the parties' amended sales contract, as the appellant contends.[5]

In the argument portion of its brief as to Point II, the only argument asserted by the appellant, and authority cited in support thereof, pertaining to damages for breach of contract is that paragraph 12 of the sales contract expressly limited the respondents' damages to the *"lesser* of either the costs of needed repairs or reduction in the market value of the unit cause by the lack of repairs, a common measure of damages under law," and there was no evidence in the record of the diminution of value. (Emphasis in original.) In this regard, paragraph 12 reads:

5. The appellant also argues in Point II that as to a breach of an "implied warranty of merchantability" the proper measure of damages was the "difference between the value of the warranted property as provided and the value it would have had if it had conformed to warranty" and that there was no evidence as to these values.

LIMITATION OF DAMAGES. IF THE MANUFACTURER(S)' WARRANTY IS LIMITED TO REPAIR OR REPLACEMENT AND SUCH WARRRANTY FAILS BECAUSE OF ATTEMPT [*SIC* ] AT REPAIR ARE NOT COMPLETED WITHIN A REASONABLE TIME OR THE MANUFACTURER(S) HAS (HAVE) GONE OUT OF BUSINESS, I AGREE, THAT IF I AM ENTITLED TO ANY DAMAGES AT ALL AGAINST YOU, MY DAMAGES ARE LIMITED TO THE LESSER OF EITHER THE COST OF NEEDED REPAIRS OR REDUCTION IN THE MARKET VALUE OF THE UNIT CAUSED BY THE LACK OF REPAIRS. IN ANY CASE, YOU WILL NOT BE REQUIRED TO PAY ME ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES. I ALSO AGREE THAT ONCE I HAVE ACCEPTED THE UNIT, EVEN THOUGH THE MANUFACTURER(S)' WARRANTY DOES NOT ACCOMPLISH IT'S [*SIC* ] PURPOSE, THAT I CANNOT RETURN THE UNIT TO YOU AND SEEK A REFUND FOR ANY REASON.

From the express language of this paragraph, it is clear that its application in limiting the respondents' damages would apply only where a breach of the manufacturer's warranty and its failure to satisfactorily repair could be found. This factually is not our case, and thus, paragraph 12 has no application or bearing on the issue presented.

Point denied.

### Conclusion

The circuit court's judgment awarding damages to the respondents is affirmed, except as to its award of damages to the respondents of $1,500 for the appellant's alleged failure to complete the "excavation and finish grade" work, which is reversed and the cause remanded for the sole purpose of the court's amending its judgment to find for the appellant on the respondents' claim with respect to this work.

ULRICH, P.J., and NEWTON, J., concur.