# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 06-3357/3358

_____

| | | |
|---|---|---|
| C.B.C. Distribution and Marketing, Inc., | * | |
| | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeals from the United States |
| Major League Baseball Advanced Media, L.P., | * | District Court for the Eastern |
| | * | District of Missouri. |
| | * | |
| Defendant-Appellant, | * | |
| | * | |
| The Major League Baseball Players Association, | * | |
| | * | |
| | * | |
| Intervenor-Appellant. | * | |
| _____ | * | |
| | * | |
| National Football League Players Association, National Football League Players, Inc.; NBA Properties, Inc.; NHL Enterprises, L.P.: NFL Ventures, L.P.; National Association for Stock Car Auto Racing, Inc.; PGA TOUR, Inc.; WNBA Enterprises, LLC; International Licensing Industry Merchandisers' Association, Inc., | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Amici on behalf of Appellants, | * | |
| | * | |

Fantasy Sports Trade Association;            *
First American Real Estate                   *
Solutions, LLC; TransUnion, LLC;             *
Reed Elsevier Inc.,                          *
                                             *
            Amici on Behalf of               *
            Appellee.                        *

_____

Submitted:  June 14, 2007
Filed:  October 16, 2007

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

C.B.C. Distribution and Marketing, Inc., brought this action for a declaratory judgment against Major League Baseball Advanced Media, L.P., to establish its right to use, without license, the names of and information about major league baseball players in connection with its fantasy baseball products.  Advanced Media counter-claimed, maintaining that CBC's fantasy baseball products violated rights of publicity belonging to major league baseball players and that the players, through their association, had licensed those rights to Advanced Media, the interactive media and Internet company of major league baseball.  The Major League Baseball Players Association intervened in the suit, joining in Advanced Media's claims and further asserting a breach of contract claim against CBC.  The district court granted summary judgment to CBC, *see C.B.C. Distrib. and Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, 443 F. Supp. 2d 1077 (E.D. Mo. 2006), and Advanced Media and the Players Association appealed.  We affirm.

I.

CBC sells fantasy sports products via its Internet website, e-mail, mail, and the telephone. Its fantasy baseball products incorporate the names along with performance and biographical data of actual major league baseball players. Before the commencement of the major league baseball season each spring, participants form their fantasy baseball teams by "drafting" players from various major league baseball teams. Participants compete against other fantasy baseball "owners" who have also drafted their own teams. A participant's success, and his or her team's success, depends on the actual performance of the fantasy team's players on their respective actual teams during the course of the major league baseball season. Participants in CBC's fantasy baseball games pay fees to play and additional fees to trade players during the course of the season.

From 1995 through the end of 2004, CBC licensed its use of the names of and information about major league players from the Players Association pursuant to license agreements that it entered into with the association in 1995 and 2002. The 2002 agreement, which superseded in its entirety the 1995 agreement, licensed to CBC "the names, nicknames, likenesses, signatures, pictures, playing records, and/or biographical data of each player" (the "Rights") to be used in association with CBC's fantasy baseball products.

In 2005, after the 2002 agreement expired, the Players Association licensed to Advanced Media, with some exceptions, the exclusive right to use baseball players' names and performance information "for exploitation via all interactive media." Advanced Media began providing fantasy baseball games on its website, MLB.com, the official website of major league baseball. It offered CBC, in exchange for a commission, a license to promote the MLB.com fantasy baseball games on CBC's website but did not offer CBC a license to continue to offer its own fantasy baseball products. This conduct by Advanced Media prompted CBC to file the present suit,

alleging that it had "a reasonable apprehension that it will be sued by Advanced Media if it continues to operate its fantasy baseball games."

The district court granted summary judgment to CBC. It held that CBC was not infringing any state-law rights of publicity that belonged to major league baseball players. *C.B.C.*, 443 F. Supp.2d at 1106-07. The court reasoned that CBCs fantasy baseball products did not use the names of major league baseball players as symbols of their identities and with an intent to obtain a commercial advantage, as required to establish an infringement of a publicity right under Missouri law (which all parties concede applies here). *Id.* at 1085-89. The district court further held that even if CBC were infringing the players' rights of publicity, the first amendment preempted those rights. *Id.* at 1091-1100. The court rejected, however, CBC's argument that federal copyright law preempted the rights of publicity claim. *Id.* at 1100-03. Finally, the district court held that CBC was not in violation of the no-use and no-contest provisions of its 2002 agreement with the Players Association because "the strong federal policy favoring the full and free use of ideas in the public domain as manifested in the laws of intellectual property prevails over [those] contractual provisions" (internal quotations omitted). *Id.* at 1106-07.

Because this appeal is from the district court's grant of summary judgment, our review is *de novo*, and we apply "the same standards as the district court and view[] the evidence in the light most favorable to the nonmoving party." *Travelers Prop. Cas. Co. of Am. v. General Cas. Ins. Co.*, 465 F.3d 900, 903 (8th Cir. 2006). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We also review *de novo* the district court's interpretation of state law, including its interpretation of Missouri law regarding the right of publicity. *See Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003). When state law is ambiguous, we must "predict how the

highest court of that state would resolve the issue." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000).

## II.

### A.

An action based on the right of publicity is a state-law claim. *See Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 566 (1977). In Missouri, "the elements of a right of publicity action include: (1) That defendant used plaintiff's name as a symbol of his identity (2) without consent (3) and with the intent to obtain a commercial advantage." *Doe v. TCI Cablevision*, 110 S.W.3d 363, 369 (Mo. 2003), *cert. denied*, 540 U.S. 1106 (2004). The parties all agree that CBC's continued use of the players' names and playing information after the expiration of the 2002 agreement was without consent. The district court concluded, however, that the evidence was insufficient to make out the other two elements of the claim, and we address each of these in turn.

With respect to the symbol-of-identity element, the Missouri Supreme Court has observed that " 'the name used by the defendant must be understood by the audience as referring to the plaintiff.' " The state court had further held that "[i]n resolving this issue, the fact-finder may consider evidence including 'the nature and extent of the identifying characteristics used by the defendant, the defendant's intent, the fame of the plaintiff, evidence of actual identification made by third persons, and surveys or other evidence indicating the perceptions of the audience.' " *Doe*, 110 S.W.3d at 370 (quoting Restatement (Third) of Unfair Competition § 46 cmt. d).

Here, we entertain no doubt that the players' names that CBC used are understood by it and its fantasy baseball subscribers as referring to actual major league baseball players. CBC itself admits that: In responding to the appellants' argument that "this element is met by the mere confirmation that the name used, in fact, refers

to the famous person asserting the violation," CBC stated in its brief that "if this is all the element requires, CBC agrees that it is met." We think that by reasoning that "identity," rather than "mere use of a name," "is a critical element of the right of publicity," the district court did not understand that when a name alone is sufficient to establish identity, the defendant's use of that name satisfies the plaintiff's burden to show that a name was used as a symbol of identity.

It is true that with respect to the "commercial advantage" element of a cause of action for violating publicity rights, CBC's use does not fit neatly into the more traditional categories of commercial advantage, namely, using individuals' names for advertising and merchandising purposes in a way that states or intimates that the individuals are endorsing a product. *Cf.* Restatement (Third) of Unfair Competition § 47 cmt. a, b. But the Restatement, which the Missouri Supreme Court has recognized as authority in this kind of case, *see Doe*, 110 S.W.3d at 368, also says that a name is used for commercial advantage when it is used "in connection with services rendered by the user" and that the plaintiff need not show that "prospective purchasers are likely to believe" that he or she endorsed the product or service. Restatement (Third) of Unfair Competition § 47 & cmt. a. We note, moreover, that in Missouri, "the commercial advantage element of the right of publicity focuses on the defendant's intent or purpose to obtain a commercial benefit from use of the plaintiff's identity." *Doe*, 110 S.W.3d at 370-71. Because we think that it is clear that CBC uses baseball players' identities in its fantasy baseball products for purposes of profit, we believe that their identities are being used for commercial advantage and that the players therefore offered sufficient evidence to make out a cause of action for violation of their rights of publicity under Missouri law.

### B.

CBC argues that the first amendment nonetheless trumps the right-of-publicity action that Missouri law provides. Though this dispute is between private parties, the state action necessary for first amendment protections exists because the right-of-

publicity claim exists only insofar as the courts enforce state-created obligations that were "never explicitly assumed" by CBC. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 668 (1991).

The Supreme Court has directed that state law rights of publicity must be balanced against first amendment considerations, *see Zacchini v. Scripps-Howard Broad.*, 433 U.S. 562 (1977), and here we conclude that the former must give way to the latter. First, the information used in CBC's fantasy baseball games is all readily available in the public domain, and it would be strange law that a person would not have a first amendment right to use information that is available to everyone. It is true that CBC's use of the information is meant to provide entertainment, but "[s]peech that entertains, like speech that informs, is protected by the First Amendment because '[t]he line between the informing and the entertaining is too elusive for the protection of that basic right.' " *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 969 (10th Cir. 1996) (quoting *Winters v. New York*, 333 U.S. 507, 510 (1948)); *see also Zacchini*, 433 U.S. at 578. We also find no merit in the argument that CBC's use of players' names and information in its fantasy baseball games is not speech at all. We have held that "the pictures, graphic design, concept art, sounds, music, stories, and narrative present in video games" is speech entitled to first amendment protection. *See Interactive Digital Software Ass'n v. St. Louis County, Mo.*, 329 F.3d 954, 957 (8th Cir. 2003). Similarly, here CBC uses the "names, nicknames, likenesses, signatures, pictures, playing records, and/or biographical data of each player" in an interactive form in connection with its fantasy baseball products. This use is no less expressive than the use that was at issue in *Interactive Digital*.

Courts have also recognized the public value of information about the game of baseball and its players, referring to baseball as "the national pastime." *Cardtoons*, 95 F.3d at 972. A California court, in a case where Major League Baseball was itself defending its use of players' names, likenesses, and information against the players' asserted rights of publicity, observed, "Major league baseball is followed by millions

-7-

of people across this country on a daily basis ... The public has an enduring fascination in the records set by former players and in memorable moments from previous games ... The records and statistics remain of interest to the public because they provide context that allows fans to better appreciate (or deprecate) today's performances." *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 411 (2001). The Court in *Gionfriddo* concluded that the "recitation and discussion of factual data concerning the athletic performance of [players on Major League Baseball's website] command a substantial public interest, and, therefore, is a form of expression due substantial constitutional protection." *Id.* We find these views persuasive.

In addition, the facts in this case barely, if at all, implicate the interests that states typically intend to vindicate by providing rights of publicity to individuals. Economic interests that states seek to promote include the right of an individual to reap the rewards of his or her endeavors and an individual's right to earn a living. Other motives for creating a publicity right are the desire to provide incentives to encourage a person's productive activities and to protect consumers from misleading advertising. *See Zacchini*, 433 U.S. at 573, 576; *Cardtoons*, 95 F.3d at 973. But major league baseball players are rewarded, and handsomely, too, for their participation in games and can earn additional large sums from endorsements and sponsorship arrangements. Nor is there any danger here that consumers will be misled, because the fantasy baseball games depend on the inclusion of all players and thus cannot create a false impression that some particular player with "star power" is endorsing CBC's products.

Then there are so-called non-monetary interests that publicity rights are sometimes thought to advance. These include protecting natural rights, rewarding celebrity labors, and avoiding emotional harm. *See Cardtoons*, 95 F.3d at 973. We do not see that any of these interests are especially relevant here, where baseball players are rewarded separately for their labors, and where any emotional harm would most likely be caused by a player's actual performance, in which case media coverage

would cause the same harm.  We also note that some courts have indicated that the right of publicity is intended to promote only economic interests and that non-economic interests are more directly served by so-called rights of privacy.  *See, e.g.*, *id*. at 967; *Gionfriddo*, 94 Cal. App. 4th at 409 (2001); *see also Haelan Laboratories v. Topps Chewing Gum*, 202 F.2d 866, 868 (2d Cir. 1953).  For instance, although the court in *Cardtoons*, 95 F.3d at 975-76, conducted a separate discussion of non-economic interests when weighing the countervailing rights, it ultimately concluded that the non-economic justifications for the right of publicity were unpersuasive as compared with the interest in freedom of expression.  "Publicity rights ... are meant to protect against the loss of financial gain, not mental anguish."  *Id.* at 976.  We see merit in this approach.

Because we hold that CBC's first amendment rights in offering its fantasy baseball products supersede the players' rights of publicity, we need not reach CBC's alternative argument that federal copyright law preempts the players' state law rights of publicity.

### III.

We come finally to the breach of contract issue.  The 2002 contract between the Players Association and CBC specifically provided:  "It is understood and agreed that [the Players Association] is the sole and exclusive holder of all right, title and interest in and to the Rights."  CBC undertook not to "dispute or attack the title or any rights of Players' Association in and to the Rights and/or the Trademarks or the validity of the license granted," either during or after the expiration of the agreement (the no-challenge provision).  CBC also agreed that, upon expiration or termination of the contract, it would "refrain from further use of the Rights and/or the Trademarks or any further reference to them, either directly or indirectly" (the no-use provision).  The Players Association maintains that the no-challenge and no-use provisions of the 2002 agreement are fatal to CBC's claim.  We disagree.

In holding the no-use and no-challenge provisions unenforceable as against public policy, the district court applied a Supreme Court decision dealing with patents. In that case, the Supreme Court held that the doctrine of licensee estoppel (under which a licensee is estopped from contesting the validity of its license, *see Idaho Potato Comm'n v. M&M Produce Farm & Sales*, 335 F.3d 130, 135 (2d Cir. 2003), *cert. denied*, 541 U.S. 1027 (2004)), must give way when the "strong federal policy favoring the full and free use of ideas in the public domain" contained in federal patent law outweighs the "competing demands ... of contract law." *Lear, Inc. v. Adkins*, 395 U.S. 653, 674, 675 (1969). The *Lear* balancing approach has been applied to other areas of federal intellectual property law, *see Idaho Potato*, 335 F.3d at 137-39 (certification marks); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 328-29 (6th Cir. 1973), *cert. denied*, 414 U.S. 858 (1973) (trademarks); *see also Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1200-01 (7th Cir. 1987) (copyright). The district court's application of the *Lear* principles to a state law right-of-publicity action, however, was unique so far as we can determine.

We do not reach the issue of whether *Lear* is applicable here, though, because we believe that the contested contract terms are unenforceable for a different reason. We first note that in its brief, CBC argued that it should be relieved of its no-use and no-challenge obligations because the Players Association breached a warranty contained in § 1(b) of the 2002 agreement. Section 1(b) of the agreement provides that "[the Players Association] represents and warrants that it has the authority to grant the rights licensed herein." CBC argued that this was a warranty of title in the players' publicity rights and that the Players Association breached this warranty, either because the players did not have publicity rights or because CBC's first amendment rights superseded any such publicity rights. We find this argument meritless: Section 1(b) is not a warranty of title, it is merely a warranty that the Players Association is the agent of the players. That warranty was not breached.

Although the parties did not cite to it in their briefs, the agreement does contain what we believe is a warranty of title not in § 1(b), but in § 8(a). The agreement provides that its interpretation will be governed by New York law. In New York, a contractual warranty is defined as " 'an assurance by one party to a contract of the existence of a fact upon which the other party may rely.' " *CBS Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496, 503, 553 N.E.2d 997, 1000 (1990) (quoting *Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946) (Hand, J.)). Section 8(a) of the agreement provides that the Players Association "is the sole and exclusive holder of all right, title and interest" in and to the names and playing statistics of virtually all major league baseball players. This is quite obviously a representation or warranty that the Players Association did in fact own the state law publicity rights at issue here. For the reasons given above, the Players Association did not have exclusive "right, title and interest" in the use of such information, and it therefore breached a material obligation that it undertook in the contract. CBC is thus relieved of the obligations that it undertook, and the Players Association cannot enforce the contract's no-use and no-challenge provisions against CBC.

## IV.

For the foregoing reasons, the district court's grant of summary judgment to CBC is affirmed.

COLLOTON, Circuit Judge, dissenting.

I agree with the court's discussion of the right of publicity in Missouri and the application of the First Amendment in this context. I would resolve the contractual issues differently, however, and I therefore respectfully dissent.

Advanced Media and the Major League Baseball Players Association ("MLBPA") contend that CBC has violated two provisions of the applicable License Agreement as set forth in the majority opinion – the "no-challenge" provision and the

-11-

"no-use" provision. CBC does not really dispute that it violated the restrictions, but it contends that the contractual provisions are unenforceable. I disagree with the court's conclusion, *sua sponte*, that the provisions are unenforceable because MLBPA breached a warranty set forth in section 8(a) of the agreement.

Section 8(a) appears under a heading "Ownership of Rights." It provides as follows: "It is understood and agreed that MLBPA is the sole and exclusive holder of all right, title and interest in and to the Rights and/or Trademarks for the duration of this Agreement." Given the court's resolution of issues concerning the right of publicity and the First Amendment, section 8(a) wins the day for CBC only if it is a warranty by MLBPA that CBC does not have rights under the First Amendment to use the players' names and statistics in its fantasy baseball games.

Assuming that section 8(a) does address CBC's constitutional rights (as opposed merely to the players' state-law rights of publicity, which are accurately represented), and assuming that one party's prediction about the constitutional rights of another party is the sort of "fact" that can be warranted under New York law, section 8(a) does not purport to make such a warranty. The provision states that the parties "agree" that MLPBA is the sole and exclusive holder of all right, title and interest in and to the Rights. CBC surely can "agree," as a matter of good business judgment, to bargain away any uncertain First Amendment rights that it may have in exchange for the certainty of what it considers to be an advantageous contractual arrangement. *See Paragould Cablevision v. City of Paragould*, 930 F.2d 1310, 1315 (8th Cir. 1991). That CBC later decided it did not need a license, and that it preferred instead to litigate the point, does not relieve the company of its contractual obligation. *See Heath v. Dick Co.*, 253 F.2d 30, 34-35 (7th Cir. 1958).

I also do not believe the district court's grant of summary judgment invalidating the no-use and no-contest provisions can be sustained on the grounds actually raised by CBC. I agree with the court that MLBPA has not breached the warranty set forth

in section 1(b) of the agreement. And I would not adopt the district court's conclusion that the Supreme Court's decision in *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), should be applied to declare the no-use and no-contest provisions unenforceable as against public policy. *Lear* held that state contract law establishing the doctrine of licensee estoppel in a patent case was preempted where its enforcement would significantly frustrate "overriding federal policies" embodied in the federal patent laws. The *Lear* approach to preemption has been extended only to areas where there are comparable federal policies derived from federal statutes that justify the preemption of state law. In this case, there is no federal statute that addresses state-law contract obligations with respect to the right of publicity, and no indication that Congress sought to abrogate contracts in this area that are otherwise enforceable under state law. I would not fashion a rule of federal common law that abrogates these freely negotiated contractual provisions. *See Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1200 (7th Cir. 1987).

For these reasons, I would reverse the district court's grant of summary judgment in favor of CBC.

_____