# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1663

_____

STL 300 N. 4th, LLC,                    *
                                        *
        Plaintiff-Appellant,            *
                                        *
STL 400 N. 4th, LLC,                    *
                                        *
        Plaintiff,                      *
                                        *   Appeal from the United States
    v.                                  *   District Court for the
                                        *   Eastern District of Missouri.
Value St. Louis Associates, L.P.,       *
                                        *
        Defendant-Appellee,             *
                                        *
Integrity Real Estate Corp.,            *
                                        *
        Defendant.                      *

_____

Submitted: January 14, 2008
Filed: September 3, 2008

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and ERICKSON,[1] District Judge.

_____

SHEPHERD, Circuit Judge.

_____

[1] The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, sitting by designation.

In this diversity action, plaintiff STL 300 N. 4th LLC appeals the district court's grant of summary judgment and declaratory judgment in favor of defendant Value St. Louis Associates, L.P. For the reasons explained below, we reverse and remand.

I.

On April 21, 1964, a ground lease was entered into for real estate located at 300 North 4th Street in St. Louis, Missouri; the lease was amended on September 1, 1967. STL 300 N. 4th LLC ("STL 300," "landlord," or "lessor") is the successor in interest to the original landlord and is the current owner of the real estate; Value St. Louis Associates, L.P. ("Value," "tenant," or "lessee") is the successor in interest to the original tenant and is the current owner of the apartment building and other improvements built on the real estate.

As amended, the ground lease provides for a 76-year lease term and is scheduled to terminate on April 20, 2040. The lease sets the annual rent for the first 40 years of the term and provides that the annual rent is to be recalculated in the 40th, 52nd, and 64th years, or 2004, 2016, and 2028, at a sum equal to six percent of the "then appraised value of the demised premises" with a stipulation that no increase shall exceed 25 percent of the last previous annual rent or be less than $209,034.12 or the last preceding annual rent, whichever is higher. The lease provides that "[a]ppraisals shall be made by three qualified appraisers, one of whom shall be appointed by Landlord, one by Tenant, and the third by the appointed appraisers."

At issue in this case is the definition of the term "demised premises." STL 300 argues that "demised premises" means a "hypothetical fee simple interest" in the land, that is the value of the land without consideration of the effect of the lease. Value contends that "demised premises" is defined as a leased fee interest in the land, that is the value of the land subject to the lease. The third appraiser valued the property based on the two separate definitions. Under STL 300's approach, the third appraiser

-2-

valued the property at $8.33 million. Under Value's definition, the third appraiser valued the property at $2.7 million.[2] The impact of these vastly different appraisals is significant. If STL 300's approach is correct, the cost of the annual rent will increase by 25 percent; otherwise the rent will remain at its current level. Value's appraiser noted in his report that, under Value's leased fee theory, "[t]here would appear to be little or no probability of future increases in the base rent of $209,034."

STL 300 initiated this diversity action seeking a declaratory judgment. Both parties agree that Missouri law governs the interpretation of the lease. In granting summary judgment, the district court sided with Value and determined that the proper definition of "demised premises" under the lease is the value of the property taking into consideration the lease. The district court based its decision in part on language from the preamble of the lease which describes the metes and bounds of the property and sets forth certain easements to the property. At the conclusion of the preamble, the lease provides that "[t]he above described premises are hereinafter referred to as the 'demised premises.'" The critical paragraph from the preamble, with the handwritten and initialed additions italicized, is as follows:

> TOGETHER WITH all of the right, title and interest, if any, of the Landlord, of, in and to the beds of the streets, roads and avenues in front of and adjoining the above described premises; but subject, however, to all applicable building and zoning restrictions, regulations, and resolutions and ordinances, as the same may affect the demised premises; subject to easements created or to be created in favor of applicable governmental authorities or jurisdiction and the public utility companies for the installation of sewer lines, water mains, fire hydrants, gas, electric and telephone and other service over, under and through the streets named above *also subject to the Lessee's fee interest in* and to the buildings to be erected upon the premises above described, *which they hereby retain.*

---

[2] Value's appraiser valued the property at $2.32 million. The record does not contain the appraised value of the real estate calculated by STL 300's appraiser.

Relying upon this language, the district court held that

> the handwritten language makes it clear that the plain meaning of the language of the Lease[] establishes that the parties intended the demised premises to be subject to the lessee['s] fee interest in the buildings which by the very definition of a leased fee interest means that any appraisal of the demised premises must be based on the Landlord['s] ownership interest in the land with the rights of uses and occupancy conveyed by the Lease[] to the Tenant[], the rights of each being specified in the Lease[].

In support of this position, the district court relied on Mo. Baptist Children's Home v. State Tax Comm'n of Mo., 867 S.W.2d 510, 511-12 (Mo. 1993) (en banc), wherein the Missouri Supreme Court held that in assessing commercial property for tax purposes, the "[t]rue value in money" of the property "is the price which the property would bring from a willing buyer when offered for sale by a willing seller" or "the fair market value of the property on the valuation date." Id. at 512. Such assessment required consideration of the impact of a long-term lease on the property. Id. The district court went further to state that "even assuming, arguendo, that the Lease [is] ambiguous, which [it] clearly [is] not, the court finds that the Tenant['s] position is the most rational and probable interpretation." The district court explained that as the time remaining on the lease shortens, the value of the property, and subsequently the rent amount, will increase because STL 300 will be nearing the point at which it will acquire ownership of all improvements, including the buildings erected on the land.

In a separate order, the district court concluded, based on the lease's provision for appointment of a third appraiser, that the intent of the parties was to give the third appraiser's determination of value binding effect should there be a deadlock between the parties' appraisers. The district court deemed the appraisal process to have failed when the parties decided not to follow the procedure outlined in the lease, instead instructing the third appraiser to alternately determine the value under the two

different theories. Thus, the district court held the value of the demised premises to be $2.7 million, the appraised value determined by the third appraiser under Value's leased fee interest theory.

On appeal, STL 300 raises two arguments. First, it claims the district court erred in construing the plain terms of the lease to define "demised premises" as the value of the land subject to the ground lease. STL 300 contends (1) the definition of "demised premises" in the lease is clear when the lease is reviewed in its entirety, (2) the rent-adjustment provision of the lease supports a finding that the parties intended the appraisal to be made without consideration of the lease, (3) Value's approach likely would cause the absurd result of the amount of rent remaining constant during the 76-year term of the lease, and (4) the district court's reliance on Missouri Baptist is misplaced. Second, STL 300 claims that the district court erred in declaring the value of the property based solely on the third appraiser's determination without permitting STL 300 the opportunity to develop the record further.

Value responds that the language of the lease unambiguously dictates that the "demised premises" should be based on a leased fee interest in the land, and that controlling Missouri law, specifically the Missouri Baptist case, supports that position. Value also takes exception with STL 300's claim that the district court erred in declaring the value of the property based on the third-party appraisal.

## II.

In this appeal of "the district court's grant of summary judgment, our review is de novo, and we apply 'the same standards as the district court and view[] the evidence in the light most favorable to the nonmoving party.'" C.B.C. Distrib. & Mktg., Inc., v. Major League Baseball Advanced Media, 505 F.3d 818, 821 (8th Cir. 2007), cert. denied, 128 S. Ct. 2872 (2008) (quoting Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Co., 465 F.3d 900, 903 (8th Cir. 2006)). The grant of summary

judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's interpretation of Missouri state law de novo. C.B.C. Distribution, 505 F.3d at 821. "When state law is ambiguous, we must 'predict how the highest court of that state would resolve the issue.'" Id. at 821-22 (quoting Clark v. Kellogg Co., 205 F.3d 1079, 1082 (8th Cir. 2000)).

Interpretation of a contract is a question of law in Missouri, and the general rule of construing a lease agreement is to ascertain the intentions of the parties and to give effect to those intentions. See Speedie Food Mart, Inc. v. Taylor, 809 S.W.2d 126, 129 (Mo. Ct. App. 1991) ("The primary rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention."). In determining the parties' intentions, we consider the entire lease and apply a reasonable construction to the lease. Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. 2003) (en banc) (per curiam) ("The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning."); Howe v. ALD Servs., Inc., 941 S.W.2d 645, 650-51 (Mo. Ct. App. 1997) ("In construing the lease agreement, we follow the general rules of construction governing contracts. Two basic principles for construing contracts are: 1) all provisions of a contract must, if possible, be given effect, and 2) a contract should be given a reasonable construction." (internal citations and footnotes omitted)).

Neither STL 300 nor Value contends that the language of the lease is ambiguous, rather both claim that the lease is clear in its definition of "demised premises" and in the parties' intentions. "A contract is ambiguous only if its terms are susceptible to fair and honest differences. A contract is not ambiguous merely because the parties disagree as to its construction." Dunn Indus., 112 S.W.3d at 428 (citing Helterbrand v. Five Star Mobile Home Sales, Inc., 48 S.W.3d 649, 658 (Mo. Ct. App. 2001). "To determine whether a contract is ambiguous, we consider the

whole document and give the words used their natural and ordinary meaning." Helterbrand, 48 S.W.3d at 658.

Viewing the lease as a whole, we note that the preamble thereof begins by stating that the landlord "does demise and lease, . . . subject to the conditions hereinafter expressed, the real property bounded and described as follows." The lease then gives a physical description of the property. Following the physical description, the lease provides that it is subject to certain specific easements. Next the lease contains the paragraph Value claims supports its position. This paragraph indicates that the lease includes the landlord's interest in "the beds of the streets, roads and avenues in front of and adjoining the above described premises" but that the lease is subject to zoning restrictions and regulations, easements, and "the lessee's fee interest in and to the buildings to be erected upon the premises above described, which they hereby retain." This restriction recognizes that the landlord has no interest in the buildings constructed and that the tenant retains ownership of the buildings erected upon the property.

Other references to the "demised premises" in the lease support a finding that "demised premises" refers to the land. For instance, the lease provides (1) that the tenant has "the right to demolish, tear down or otherwise remove any buildings or improvements located on the demised premises" at the time the lease is entered into; (2) that the tenant will maintain insurance for "all buildings and improvements now existing or hereafter erected upon the demised premises"; (3) that the tenant will comply with all applicable laws and ordinances "whether or not the same require structural repairs or alterations, which may be applicable to the demised premises, and the sidewalks, curbs and vaults, if any, adjoining the demised premises or the use, or manner of use, of the demised premises"; and (4) that should excavations be undertaken on adjoining premises, the tenant shall permit the landlord or his agents "to enter the demised premises and to shore the foundations and walls thereof, and to do any other act or thing necessary for or incidental to the safety or preservation of the

demised premises." These characterizations of "demised premises" in the lease show that the parties intended "demised premises" to mean the vacant and unimproved land itself, without consideration of the tenant's lease interest. Thus, looking at the lease as a whole, we hold that "demised premises" means a hypothetical fee simple interest in the land, or the value of the land without consideration of the effect of the ground lease.

This approach is supported by other cases which have determined the proper interpretation of similar instruments is to disregard the effect of the lease on the value of the property. See First Nat'l Bank of Mobile v. Duckworth, 502 So.2d 709, 712 (Ala. 1987) ("Based upon sound reasoning from other jurisdictions and the logical intentions of the parties, we hold that the existence of the lease itself should not be considered in determining the value of the leased premises."); Olympia & York 2 Broadway Co. v. Produce Exch. Realty Trust, 462 N.Y.S.2d 456, 458 (N.Y. App. Div. 1983) ("By . . . specifically providing that the value of the land was to be considered as vacant and unimproved, the parties manifested a clear intention that existing structures, encumbrances and leases not be taken into account in fixing value."); Bullock's, Inc. v. Security-First Nat'l Bank of Los Angeles, 325 P.2d 185, 191 (Cal. App. Ct. 1958) ("While rental income is normally a proper factor to be considered in determining the value of property, it obviously cannot be considered when property is being appraised for the very purpose of determining the rent which should be paid."); Schipper & Block, Inc., v. Carson Pirie Scott & Co., 256 N.E.2d 854, 860 (Ill. App. Ct. 1970) (holding that an appraiser should not have "tak[en] into consideration as a depreciating factor the influence of the lease itself which required reappraisals every ten years" as to do so is "improper and unfair to the lessor").

Further, reliance upon Missouri Baptist is not helpful to Value. That case was relevant to the proper calculation of real estate taxes based on the fair market value of the property, and the Missouri Supreme Court determined that, for purposes of "[p]lacing a value on real property" the state tax commission was "quite correct to

consider actual rent as a factor in determining the value of the property under the income capitalization method." Mo. Baptist, 867 S.W.2d at 513. That ruling regarding the calculation of taxes under state law is not persuasive in this situation where the calculation of rental payments under a lease agreement is at issue.

The second issue raised on appeal concerns the district court's holding that the appraisal of the third appraiser is binding on the parties because the appointment of a third appraiser "would be rendered meaningless if the appraisal of the third appraiser were not binding on the parties." We reject this approach. The lease provides for the appointment of three appraisers initially and as a matter of course. All three appraisers are, under the lease, required to perform an appraisal of the demised premises. Certainly, we could foresee a circumstance where the parties are unable to reach an agreement on the value of the property after reviewing all three appraisals. In that situation, the opinions of a non-partisan appraiser might be given more weight by a court, however this lease does not provide for the third appraiser to serve as a tiebreaker or for his appraisal to be binding on the parties.

## III.

Accordingly, we reverse the district court's entry of summary judgment in favor of Value and declaratory judgment as to the appraised value of the demised premises and remand this matter to the district court for further consideration consistent with this opinion.

_____